**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
:
:
FRANCE TELECOM S.A.,                              :
                                                  :   **ECF CASE**
              Plaintiff,                          :
                                                  :   12 Civ. 4986 (JSR)
       -against-                                  :
                                                  :
MARVELL SEMICONDUCTOR, INC.,                      :
                                                  :
              Defendant.                          :
                                                  :
-----------------------------------------------------------x

**PLAINTIFF FRANCE TELECOM S.A.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER
VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND BACKGROUND ............................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.     STANDARD FOR TRANSFER UNDER 28 U.S.C. § 1404(a) ....................................... 3

II.    THE BALANCE OF FACTORS WEIGHS AGAINST TRANSFER IN THIS CASE ..... 5

     A.    Plaintiff's Choice of Forum Weighs Against Transfer ............................................ 5

     B.    Judicial Efficiency and the Interests of Justice Weigh Against Transfer ................ 7

     C.    The Location of Documents Factor Does Not Favor Transfer ............................... 9

     D.    The Convenience of Witnesses Factor Does Not Favor Transfer ......................... 11

     E.    The Availability of Process Factor Does Not Favor Transfer ............................... 13

     F.    The Remaining Factors Are Neutral ...................................................................... 14

CONCLUSION ........................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                     **Page(s)**

*Albert Fadem Trust v. Duke Energy Corp.*,
　214 F. Supp. 2d 341, 343, 344 (S.D.N.Y. 2002) .................................................................. 4, 14

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
　457 F. Supp. 2d 474, 478, 479 (S.D.N.Y. 2006) .................................................................. 11, 13

*Amersham Pharmacia Biotech, Inc. v. Perkins-Elmer Corp.*,
　11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) .................................................................................. 4

*Bigio v. Coca–Cola Co.*,
　448 F.3d 176, 179 (2d Cir. 2006) ............................................................................................... 6

*Caville v. Malibu Toys, Inc.*, No. 03 CIV 9727(SAS),
　2004 WL 1516799, at *2, *4 (S.D.N.Y. July 7, 2004) ................................................. 6, 14, 15

*Children's Network, LLC v. Pixfusion LLC*,
　722 F. Supp. 2d 404, 409, 413, 414 (S.D.N.Y. 2010) ............................................. 4, 14-15, 16

*Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952(DLC),
　2010 WL 3431165, at *1, *2, *3 (S.D.N.Y. Aug. 31, 2010) .............................................. 9, 10

*ESPN Inc. v. Quicksilver, Inc.*,
　581 F. Supp. 2d 542, 547, 548, 549 (S.D.N.Y. 2008) ......................................... 5, 9, 10, 12, 16

*In re Link-A-Media Devices Corp.*,
　662 F.3d 1221, 1223 (Fed. Cir. 2011) ........................................................................................ 5

*Iragorri v. United Techs. Corp.*,
　274 F.3d 65, 73 (2d Cir. 2001) ................................................................................................... 6

*Medien Patent Verwaltung AG v. Warner Bros. Entm't., Inc.*,
　749 F. Supp. 2d 188, 191, 192 (S.D.N.Y. 2010) ......................................................... 11, 13, 15

*Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463(SAS),
　2010 WL 2697073, at *2 (S.D.N.Y. July 7, 2010) .................................................................... 6

*Orb Factory Ltd. v. Design Science Toys Ltd.*,
　6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) .................................................................................... 4

*Student Advantage, Inc. v. CollegeClub.com*, No. 99 Civ. 8604(JSR),
　1999 WL 1095601, at *3 (S.D.N.Y. Dec. 3, 1999) ............................................................ 2, 4, 5

*Tomita Techs. USA, LLC v. Nintendo Co.*,
　818 F. Supp. 2d 770, 771, 772, 773 (S.D.N.Y. 2011) .................................. 3, 4, 6, 9, 11, 14, 15

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
   676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009) .............................................................................. 9

**Statutes**

35 U.S.C. §§ 1-376 ........................................................................................................................ 2

28 U.S.C. § 1404(a) .................................................................................................................. 3, 4

**Miscellaneous**

INTELLECTUAL PROPERTY: PRINCIPLES GOVERNING JURISDICTION, CHOICE OF LAW,
   AND JUDGMENTS IN TRANSNATIONAL DISPUTES § 211 (A.L.I. 2007 ed.) ................................. 7

**INTRODUCTION AND BACKGROUND**

Plaintiff France Telecom S.A. ("France Telecom") respectfully submits this Memorandum of Law in Opposition to the Motion to Transfer Venue to the Northern District of California filed by Defendant Marvell Semiconductor, Inc. ("Marvell"). The Court should deny Marvell's motion.

This case involves Marvell's infringement of U.S. Patent No. 5,446,747 (the "'747 Patent"). The '747 Patent discloses and claims novel methods for error correction coding of source digital data comprising constructed data elements commonly known as "turbo codes." The turbo code methods for error correction are revolutionary[1] and have gained widespread use in wireless communications applications including, in particular, wireless communications applications complying with third generation ("3G") and fourth generation ("4G") wireless telecommunications standards. The rights in the '747 Patent have been duly assigned to France Telecom, and numerous makers of telecommunications apparatus have purchased royalty-bearing licenses of the '747 Patent, including Broadcom, Ericsson, General Dynamics, Hughes Network Systems, Infineon, L-3 Communications, NEC, NTT-AT, Qualcomm, and STMicro.

Marvell manufactures and sells communications processors which are specially adapted for use in practicing the methods claimed by the '747 Patent and has actively induced and contributed to massive infringement of the '747 Patent in this judicial district by supplying communications processors that are specially adapted for use in BlackBerry and other wireless

---

[1] The inventor of the '747 Patent, Claude Berrou, won, among other things: the 2005 Marconi Prize for having "invented turbo codes, thereby solving a data communications puzzle that had evaded researchers for 40 years"; the 2003 IEEE Richard W. Hamming Medal "for the invention of Turbo Codes, which have revolutionized digital communications"; and the 1998 IEEE Information Theory Society Golden Jubilee Award for "the invention of Turbo Codes," an award that is given for "inventions that have had a profound impact in the technology of information transmission, processing and compression."

1

communications devices and systems used in this district.  France Telecom, which is a French company headquartered in France, has brought this action against Marvell for willful infringement of the '747 Patent under the Patent Act, 35 U.S.C. §§ 1-376.

Marvell has moved to transfer this case to the Northern District of California, where Marvell is headquartered, pursuant to 28 U.S.C. § 1404(a).  (*See* D.I. 20.)  However, in considering such a motion for transfer, "a court should not disturb a plaintiff's choice of forum unless the defendant makes … a clear and convincing showing that the balance of convenience favors the defendant's choice."  *Student Advantage, Inc. v. CollegeClub.com*, No. 99 Civ. 8604(JSR), 1999 WL 1095601, *3 (S.D.N.Y. Dec. 3, 1999) (Rakoff, J.) (internal quotations omitted).  Marvell has not met that burden.

Marvell has not shown that the Northern District of California is the locus of operative facts.  The inventor of the invention embodied by the '747 Patent is French and the invention was conceived in France.  Marvell admits in its motion papers that the "accused products were designed and developed in California, Texas, Arizona, Israel and China." (D.I. 20 at 3.)  Marvell further acknowledges in its motion papers that the allegedly infringing activities occur nationwide. (D.I. 20 at 7.)

Marvell has not identified a single third-party witness located in the Northern District of California whose testimony would be relevant to this case, or for whom the availability of process would be necessary to compel such testimony.

Marvell has not identified any other witness located in the Northern District of California whose testimony will be key to the issues to be tried in this case; nor has Marvell indicated the subject matter of any such testimony.  Instead, Marvell has offered only conclusory assertions

that certain individuals who purportedly have some (unspecified) knowledge of the design and sale of Marvell's products are located in California.

As a French company, France Telecom has legitimate reasons for bringing its patent infringement claims in the Southern District of New York and France Telecom's choice of forum deserves deference. Furthermore, judicial efficiency and the interests of justice favor retaining the case in this district. The Court has already set a schedule that will have this case ready for trial by December 27, 2012 and trial likely will be complete within one year of the filing of the complaint. By contrast, the median time from filing to trial in the Northern District of California is 34.3 months — *i.e.,* nearly three years. (LoBue Decl. Ex. A.)[2] In addition, although the dockets in both districts are very busy, the judicial workload in the Northern District of California presently is 28% higher than it is in this district. (LoBue Decl. Ex. A.) Given that both courts are equally capable of adjudicating a U.S. patent infringement action, it makes little sense to transfer this case in these circumstances.

In sum, Marvell's motion to transfer does not satisfy the requirements of Section 1404(a), but rather simply seeks to shift inconvenience from Marvell to France Telecom. The Court should deny Marvell's motion.

## ARGUMENT

### I.  STANDARD FOR TRANSFER UNDER 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *see Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 771-72 (S.D.N.Y. 2011) (Rakoff, J.). The decision whether

---

[2]  "LoBue Decl." refers to the Declaration of Joseph J. LoBue in Opposition to Defendant's Motion to Transfer Venue to the Northern District of California submitted herewith.

3

to transfer a case to another district under Section 1404(a) is a two-part inquiry. First, the Court must determine whether the case sought to be transferred could have been brought in the proposed transferee court. *Children's Network, LLC v. Pixfusion LLC*, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010). If this element is satisfied, then the Court must decide whether transfer is warranted for the convenience of parties and witnesses and in the interest of justice. *Id*. In making this determination, the Court considers nine factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.

*Tomita Techs.*, 818 F. Supp. 2d at 772 (citing *Amersham Pharmacia Biotech, Inc. v. Perkins-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998)).

The Court has "broad discretion" in making its determination regarding transfer under Section 1404. *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) (Rakoff, J.). The nine factors set forth above "do not comprise an exclusive list, nor are they to be applied in a mechanical or formulaic manner. Rather, they, and any other factors peculiar to the particular case in question, serve as guideposts to the Court's informed exercise of discretion." *Id*.

The burden of establishing that transfer is warranted lies with the defendant. *Student Advantage, Inc.*, 1999 WL 1095601, at *3 ("burden of demonstrating the desirability of transfer lies with the moving party"); *see also Orb Factory Ltd. v. Design Science Toys Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998)) (internal quotation omitted). "[I]n considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendant makes . . . a

4

clear and convincing showing that the balance of convenience favors the defendant's choice." *Student Advantage, Inc.*, 1999 WL 1095601 at *3; *see also ESPN Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (internal quotations omitted).

## II.   THE BALANCE OF FACTORS WEIGHS AGAINST TRANSFER IN THIS CASE

France Telecom does not dispute that this action could have been brought in the Northern District of California. However, the balance of relevant factors weighs against transfer in this case.

### A.   Plaintiff's Choice of Forum Weighs Against Transfer

The Court has very broad discretion to respect France Telecom's choice of forum. As plaintiff, France Telecom's choice of the Southern District of New York as the forum for its patent infringement claims is entitled to deference. *ESPN Inc.*, 581 F. Supp. 2d. at 547. Nevertheless, because New York is not France Telecom's "home forum," Marvell contends that France Telecom's "choice should be given no weight." (D.I. 20 at 12-13.) This contention lacks merit.

Generally, a plaintiff's choice of forum is entitled to *more* deference in the transfer analysis when plaintiff chooses its "home forum." But this general rule only affects the degree of deference given to plaintiff's choice, not whether such deference is given. *See In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (explaining that plaintiff's home affects the degree of deference). Moreover, special considerations mitigate the effect of this general rule when the plaintiff is a foreign entity bringing claims under U.S. law.

In the *forum non conveniens* context, the Second Circuit has provided guidance regarding the amount of weight that should be given to a foreign plaintiff that has no "home forum" in the

5

United States.  *See Bigio v. Coca–Cola Co.,* 448 F.3d 176, 179 (2d Cir. 2006); *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir. 2001).  Greater deference should be given where the choice of forum was motivated by legitimate reasons and diminishing deference should be given only when the choice is motivated by tactical advantage.  *Bigio,* 448 F.3d at 179; *Iragorri,* 274 F.3d at 73.

In *Tomita Technologies USA, LLC v. Nintendo Co*., 818 F. Supp. 2d 770 (S.D.N.Y. 2011), the Court applied these principles to the Section 1404(a) analysis:

> In the analogous context of *forum non conveniens,* the Second Circuit gives "greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons . . . and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage."  *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir. 2001).  While a plaintiff's choice of forum is often given controlling weight where the plaintiff is an established resident of the forum, *see id.* at 71 ("[A] plaintiff's choice of her home forum should be given great deference."), even foreign plaintiffs, such as TTI, are entitled to some deference in their choice of forum where it was motivated by legitimate reasons.  *See Bigio v. Coca–Cola Co.,* 448 F.3d 176, 179 (2d Cir. 2006).  Legitimate reasons for choosing a forum include "the plaintiff's residence in relation to the forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense."  *Iragorri,* 274 F.3d at 72.  In contrast, tactical advantage includes benefits from "local laws," the "generosity of juries," a defendant's "unpopularity in the region," or "the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.*

*Tomita Techs.*, 818 F. Supp. 2d at 772.  Other decisions have applied the same analysis.  *See Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463(SAS), 2010 WL 2697073, at *2 (S.D.N.Y. July 7, 2010); *Caville v. Malibu Toys, Inc*., No. 03 CIV 9727(SAS), 2004 WL 1516799, at *2 (S.D.N.Y. July 7, 2004).

France Telecom is a French company and selected the Southern District of New York as the forum for its claims for legitimate reasons.  New York is located on the east coast and is closer and more convenient for France Telecom.  The New York City area is a major

international transportation hub. Selecting New York as a forum also avoided the need for France Telecom to incur the additional, unnecessary and largely redundant legal expenses associated with retaining local counsel in the Northern District of California. Marvell has made no assertion that France Telecom selected the Southern District of New York for reasons of tactical advantage, and there plainly is no issue of "local law," "generosity of juries," or "unpopularity" of Marvell in this district at issue here.[3] Because France Telecom chose New York for legitimate reasons, its choice should be given substantial deference. This factor weighs significantly in favor of retaining the case in this district.

### B. Judicial Efficiency and the Interests of Justice Weigh Against Transfer

Judicial efficiency and the interests of justice also weigh heavily against transferring this case to the Northern District of California. According to the 2011 Federal Court Management Statistics, the median time from filing to trial of a civil action in the Northern District of California is 34.3 months — nearly three years. (LoBue Decl. Ex. A.) By contrast, the Court has already issued a case management order that requires that the case be ready for trial by December 27, 2012 and has scheduled a final pre-trial conference for January 3, 2012, at which time the Court will set a firm trial date. (*See* D.I. at 17.) If the Court retains this case, it is likely

---

[3] Indeed, had France Telecom sought to obtain tactical advantage or to impose inconvenience or expense on Marvell it could plausibly have brought its patent infringement claim in the French courts. *See Intellectual Property: Principles Governing Jurisdiction, Choice of Law, and Judgments in Transnational Disputes* § 211 (Am. L. Inst. 2007) ("(1) Except as provided in subsection (2), a court is competent to adjudicate claims and defenses arising under foreign laws pertaining to copyrights, neighboring rights, patents, trade secrets, trademarks, related intellectual property rights, and contracts that are related to any of these rights. (2) The adjudication of the validity of registered rights granted under the laws of another State is effective only to resolve the dispute among the parties to the action.").

7

that a trial would be completed within a year of the filing of the complaint.[4]  Thus, Marvell's motion for transfer of venue is also a motion for an extensive delay in the time in which France Telecom might secure relief.

In addition, judicial caseload factors favor retaining this case in the Southern District of New York.  According to the 2011 Federal Court Management Statistics, presently, the weighted number of actions per judgeship in the Northern District of California stands at 631 compared to 493 in the Southern District of New York.  (LoBue Decl. Ex. A.)  Both courts are equally capable of adjudicating a U.S. patent infringement action.  From a judicial efficiency standpoint, it makes little sense to transfer this case from the Southern District of New York to a district that presently has a 28% greater workload.

Finally, unlike the Northern District of California, this district has not adopted special local patent rules (and partly for that reason this case can be trial ready in approximately five months).  The cost of patent litigation is largely commensurate with the number and extent of pretrial proceedings that the parties must endure.  France Telecom has a strong interest in this court's streamlined, traditional approach to patent litigation and in avoiding the burden and expense that attend the cumbersome and often unnecessary special patent rules of the Northern District of California.

For these reasons, the efficiency and interests of justice factors strongly weigh in favor of retaining this case in the Southern District of New York.

---

[4]  Even absent the expedited case management order, this case likely would reach trial more quickly in this district than in the Northern District of California.  The median time from filing to trial in a civil action in the Southern District of New York is 30.6 months.  (LoBue Decl. Ex. A.)

### C. The Location of Documents Factor Does Not Favor Transfer

The location of documents and proof is a neutral factor that does not favor transfer. "[T]echnological advances have rendered certain … factors less relevant" in the Section 1404(a) analysis. *Tomita Techs.*, 818 F. Supp. 2d at 772. "In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *ESPN Inc.*, 581 F. Supp. 2d at 548; *see also TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009) (today, "location of the documents is not a significant factor in the convenience analysis"). Accordingly, this factor generally does not carry significant weight in the analysis.

However, even if it did, it would have little weight in the specific circumstances of this case. This is because Marvell has failed to identify any documents that it claims will be relevant in this case. In fact, Marvell has failed to articulate any particular facts that it plans to prove by way of defense, or to demonstrate that trial proofs of those facts cannot be presented just as effectively in this district as in the Northern District of California. Rather, Marvell merely asserts in conclusory fashion that "[t]his Court has recognized that in patent infringement cases, the majority of relevant documents are produced from the alleged infringer; thus, Marvell's location is the key consideration." (D.I. 20 at 10) (*citing Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952(DLC), 2010 WL 3431165, *2 (S.D.N.Y. Aug. 31, 2010)). But Marvell has made no showing whatsoever that this is the case here, and, if so, that Marvell's relevant documents in fact are located in California.

On the first point, we note that Marvell has served on France Telecom its first set of requests for production of documents calling for the production of 91 broad categories of documents that Marvell claims may be relevant to the case. (*See* LoBue Decl. Ex. B.) None of

9

these ninety-one categories of documents includes any Marvell documents located in the Northern District of California. Thus, Marvell's unsupported assertions — that Marvell will have "the majority of relevant documents" and that "Marvell's location is the key consideration" — do not withstand scrutiny.

On the second point, Marvell offers nothing to show that its own documents relevant to this case are located in California. On the contrary, Marvell admitted in its motion papers that "[d]ocuments regarding the Accused Products are located in Santa Clara, California; Folsom, California; Chandler, Arizona; Austin, Texas; Israel and China." (D.I. 20 at 8; D.I. 22 ¶ 20.)

These facts distinguish this case from *Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952(DLC), 2010 WL 3431165 (S.D.N.Y. Aug. 31, 2010), the case upon which Marvell relies. In *Cirrex*, the court explained: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Cirrex Sys.*, 2010 WL 3431165 at *2 (internal quotations omitted). The court then found that the defendant was "a small medical device company … located in Burlington, Massachusetts" and that "nearly all of [the defendant's] documents, including those related to development, design, testing, sales, marketing, advertising, and finances of [the accused product were] located at [its] *sole office* in Burlington, Massachusetts." *Id.* at *1, *3 (emphasis added). Unlike the relatively centralized location in *Cirrex*, Marvell's relevant documents may be scattered across multiple locations in the U.S. and in foreign countries.

Finally, when evaluating this factor, the Court may consider the "absence of … information about why it would be so difficult to transport documents to New York from California . . ." *ESPN Inc.*, 581 F. Supp. 2d at 549. Marvell has failed to explain, or even allege,

10

such difficulty. In fact, Marvell has admitted that it would have access to the relevant documents electronically through its "computer network" and "servers." (D.I. 20 at 10.) Marvell will have no difficulty collecting this information and transmitting it to New York or elsewhere as necessary. *See Tomita Techs.*, 818 F. Supp. 2d at 772 (defendant "almost certainly [would] not physically ship documents that relate to the design process from Japan to the trial court," rather "it [would] scan those documents onto a computer, producing them with the click of a mouse"); *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) ("The location of documents and records is not a compelling consideration when records are easily portable. Thus, this factor also is neutral.") (internal quotations and citations omitted).

### D.     The Convenience of Witnesses Factor Does Not Favor Transfer

Marvell has failed to meet its burden of showing that the convenience of witnesses favors transfer. Consequently, this factor likewise is neutral.

"A motion to transfer venue under § 1404(a) must be accompanied by an affidavit containing detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony . . . . Absent such a showing, the motion should be denied.'" *Am. Eagle Outfitters, Inc.*, 457 F. Supp. 2d at 478 (internal quotations omitted); *see also Medien Patent Verwaltung AG v. Warner Bros. Entm't., Inc.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."). This requirement is essential because, when evaluating this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony

that the witnesses may provide." *ESPN Inc.*, 581 F. Supp. 2d at 547.  A court cannot accomplish this task without a specific showing from the moving party.

Here, Marvell failed to satisfy these requirements.  Instead, Marvell merely made a generalized assertion that "about 76%" of its workforce works in Northern California and provided a list of California-based individuals that Marvell claims "have knowledge regarding the design, structure, and operation of the accused products" or "have knowledge with respect to sales and marketing of the accused products." (D.I. 20 at 3, 8.)  Yet, Marvell failed to explain what that knowledge is, why any of these individuals is "key" to this case, or what the substance of their testimony might be.  It is not evident that these California-based individuals are "key" or that their testimony would be relevant because Marvell otherwise admits that the "accused products were designed and developed in California, Texas, Arizona, Israel and China." (D.I. 20 at 3.)  Moreover, to the extent any of the California-based individuals is "key," Marvell has failed to show that the Southern District of New York is in fact "inconvenient" for them (as opposed to simply less convenient than the Northern District of California).

By contrast, Marvell has noticed France Telecom's pretrial deposition to proceed in this district and France Telecom does not oppose making its designees available for deposition here. (LoBue Decl. Ex. C.)

In any event, the California-based individuals mentioned in Marvell's papers all are employees of Marvell.  The "convenience of the non-party witnesses is accorded more weight than that of party witnesses." *ESPN Inc.*, 581 F. Supp. 2d at 547.  Here, Marvell has identified no third-party witnesses that would need to testify in this case.  Rather, Marvell merely opines: "[T]o the extent third party witnesses from [the chip manufacturer] TSMC may be relevant, knowledgeable individuals would likely be located in the Northern District of California, where

TSMC's U.S. headquarters is located, or in Taiwan." (D.I. 20 at 8.) We fail to see how any TSMC employees could be relevant witnesses in this case, but even if they were, the lack of specificity of Marvell's submission is fatal to its case. *See Medien Patent,* 749 F. Supp. 2d at 191 ("The location of these unnamed [non-party] witnesses thus fails to justify transfer of venue.").

Finally, this case is a straightforward action for patent infringement. The claimed inventions are error correction methods that the great majority of current day mobile telephones perform when used. Much of the evidence in this case is likely to consist of expert testimony. Marvell has not identified any of its expert witnesses in its motion papers so it is not evident that the Northern District of California will be more convenient for these witnesses. Moreover, like employee witnesses, experts can reasonably be expected to appear to testify wherever their clients want them to appear.

### E. The Availability of Process Factor Does Not Favor Transfer

The fifth factor — the availability of process — does not favor transfer for the same reason.

> The Defendants have contended that a subpoena issued by the Central District in California would have the territorial reach to cover ***more*** third party witnesses than the Southern District of New York. The Defendants fail to substantiate their argument by pointing to any specific witness to suggest that trial in New York would ***impede the attendance*** of any of their contemplated witnesses. Indeed, the Defendants do not claim that Plaintiffs' witnesses would be ***unavailable to testify*** due to location but rather that ***all of defendants' witnesses are in California.***

*Am. Eagle Outfitters, Inc.*, 457 F. Supp. 2d at 478-79 (internal citations and quotations omitted) (emphasis added).

Marvell has made the same fatal errors. All of the individuals that Marvell mentions in its papers are Marvell employees. Marvell will have no problem securing their testimony at trial.

Marvell has not identified any third-party witness that is located in California whose testimony would be relevant to the case. *See Albert Fadem Trust*, 214 F. Supp. 2d at 344 ("While defendants contend that there 'may be' witnesses whose attendance in a New York litigation this Court would be unable to compel, they offer this as a mere hypothetical with no evidence in support."). Nor has Marvell presented any evidence that any potential non-party witness would be unwilling to testify in New York. *See Caville*, 2004 WL 1516799 at *4 (noting declarations about the unwillingness of some witnesses to travel) (internal citations omitted). This factor does not weigh in favor of transfer.

### F.     The Remaining Factors Are Neutral

The remaining factors also are neutral. The third factor — the convenience of the parties — does not favor transfer. The Court has noted that because "travel has become cheaper and easier," the convenience of parties is less relevant. *Tomita Techs.*, 818 F. Supp. 2d at 772. Marvell is part of an international conglomerate that does business all over the world and will not be materially inconvenienced by having to litigate this case in the Southern District of New York. (LoBue Decl. Ex. D, at 4) (noting that Marvell Technology Group Ltd. is "one of the world's largest fabless semiconductor providers"). Moreover, assuming *arguendo* that Marvell is inconvenienced by having to litigate in New York, a transfer would only result in shifting that inconvenience to France Telecom. Such a shifting of inconvenience does not support transfer. *ESPN Inc.*, 581 F. Supp. 2d at 550 ("swapping one party's inconvenience for another does not support transfer"); *Caville*, 2004 WL 1516799 at *4 ("exchanging the burdens of inconvenience from one party to the other is not a basis for transfer").

The fourth factor — the locus of the operative facts — is neutral. "In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing

14

product was designed, developed, and produced." *Children's Network*, 722 F. Supp. 2d at 413; s*ee also Tomita Techs.*, 818 F. Supp. 2d at 773. In this case, the invention embodied by the patent-in-suit was conceived in France and the inventor is French. We do not know where the infringing aspects of the accused product were designed because, as Marvell states in its motion papers, the "accused products were designed and developed in California, Texas, Arizona, Israel and China." (D.I. 20 at 3.) In addition, Marvell acknowledges in its motion papers that the allegedly infringing activities occur nationwide. (D.I. 20 at 7) ("the accused products are sold and used nationwide"). Thus, one cannot say that the locus of the operative facts in this case is California.

Furthermore, even if most or all of the design work on the infringing aspects of the accused products had been done in California, it would not alter this conclusion. In *Medien Patent*, a case very much like this one, the court concluded:

> [A]lthough much of the allegedly infringing activity occurred in California, it is not the exclusive locus of operative facts in this case.
>
> \* \* \*
>
> That California is not the sole locus of operative facts weakens the case for transferring venue there. Indeed, this case's transatlantic fact pattern further contributes to the convenience of adjudicating the dispute in New York. [The Swiss plaintiff] intends to introduce testimony from the patented invention's German creator as well as a number of German witnesses . . . New York would be the more convenient forum for these witnesses, just as it would be for [the Swiss plaintiff] itself.

*Medien Patent*, 749 F. Supp. 2d at 191-92. As in *Medien Patent*, the "transatlantic fact pattern" of this case renders the fifth factor neutral or weighs in favor of retaining the case in New York.

The sixth factor — the relative means of the parties — is neutral. "A court should consider the relative means of the parties [w]here a disparity exists between the means of the

15

parties . . . ." *Caville*, 2004 WL 1516799 at *4 (internal quotations omitted). No material disparity exists here.

Finally, both the Southern District of New York and the Northern District of California are familiar with federal patent law. Thus, the seventh factor — the forum's familiarity with the governing law — likewise is neutral. *See Children's Network*, 722 F. Supp. 2d at 414.

## CONCLUSION

For the foregoing reasons, Marvell has not met its burden of showing that the balance of factors weighs in favor of transfer. Accordingly, the Court should deny Marvell's motion. *ESPN Inc.*, 581 F. Supp. 2d at 547 ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (internal quotations omitted).

Dated:  New York, New York
            August 13, 2012

FRIED FRANK HARRIS SHRIVER &
    JACOBSON LLP

By:  /s/ Joseph J. LoBue
       (admitted *pro hac vice*)

James W. Dabney
Henry C. Lebowitz

Elliot E. Polebaum
Joseph J. LoBue

FRIED FRANK HARRIS SHRIVER &
    JACOBSON LLP

801 17th Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
elliot.polebaum@friedfrank.com
joseph.lobue@friedfrank.com

One New York Plaza
New York, NY 10004
Tel.: (212) 859-8000
Facsimile:  (212) 859-4000
james.dabney@friedfrank.com
henry.lebowitz@friedfrank.com

*Attorneys for Plaintiff*
*France Telecom S.A.*