<u>Via ECF</u>
Magistrate Judge Nathaniel Cousins
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

Re: *France Telecom S.A. v. Marvell Semiconductor, Inc.*, 3-12-cv-04967-WHA (NC)

Your Honor:

Pursuant to Your Honor's Civil Standing Order, the parties submit this joint letter regarding their dispute over the adequacy of Plaintiff France Telecom S.A.'s ("France Telecom") Patent L.R. 3-1 Disclosure dated February 14, 2013 ("ICs") under the Patent Local Rules of this Court. Defendant Marvell Semiconductor, Inc. ("Marvell") seeks an order striking France Telecom's ICs, or, in the alternative, an order compelling France Telecom to serve amended ICs in compliance with Patent L.R. 3-1. The parties have exchanged letters expressing their respective positions on the issue and have met and conferred[1] in a good faith effort to resolve this dispute. The parties are at an impasse on this issue and request the Court's assistance.[2]

## I. France Telecom's Claim Charts

**Unresolved Issue**: Whether France Telecom's claim charts adequately disclose its infringement contentions as required by Patent L.R. 3-1(c).

**Marvell's Position**: Nearly eight months after filing suit, Plaintiff served ICs that failed to state "specifically where each element of each asserted claim is found within each Accused Instrumentality," per Patent L.R. 3-1(c). Instead, it merely charted Claim 1 against industry standards without reference to the accused products and failed to identify where in the accused products each element of each asserted claim is met. In its ICs, Plaintiff concedes that it "has not been able to make any direct comparison of the accused products of the '747 patent." It did not conduct "reverse engineering or its equivalent" of the accused products, as required in this District. *Pagemelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2013 U.S. Dist. LEXIS 1588, at *4 (N.D. Cal. Jan. 4, 2013). Plaintiff could easily have obtained samples of the accused products, and there is no indication that analysis was impractical.

Furthermore, even its claim chart comparing Claim 1 against the industry standards fails to provide sufficient detail for adequate notice as to how the standards allegedly infringe. The cited standards merely disclose possible channel coding schemes that may be used and do not "delineate details which are critical to an assertion or determination of infringement" such that analysis of the accused products was unnecessary. Here, citing the standards alone is not sufficient to disclose Plaintiff's contentions on where each claim element is found within each accused product. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex. 2008). Plaintiff's reliance on the *Fujitsu* and *Dynacore* cases is misplaced, as each held on their respective facts that the standards alone were insufficient to establish infringement. Tellingly,

---

[1] France Telecom counsel Joseph LoBue, located in Washington, D.C., and Marvell counsel Eric Huang, located in New York, met and conferred by telephone on March 15, 2013.

[2] Pursuant to the Civil Standing Order, no exhibits are attached to this joint statement. The parties will provide a copy of the ICs or any other materials upon request of the Court.

Plaintiff cites no cases finding infringement based on standards alone. Plaintiff's charts do not disclose, for example, how products complying with the standards perform "two independent and parallel steps of systematic convolutional coding." Indeed, Plaintiff cites in its charts excerpts from the standards without providing any explanation how either the standards or Fig. 1 of the '747 patent implements "two independent and parallel steps of systematic convolutional coding." Plaintiff quotes a passage from the standard that suggests the output consists of (1) the input to the first coder, (2) the output of the first coder, and (3) the output of the second coder. The input to the second decoder is *not* output, as required to make the second coding "systematic." Fig. 1 of the '747 patent similarly shows that the input to the second decoder is *not* output. Plaintiff's comparison of the standards to a *figure* from the '747 patent does not explain how the *claim* is met. Further, Plaintiff's reliance on unrelated Marvell patents is also misplaced; those patents are not relevant, were not cited in the claim charts, and do not explain how the '747 patent claims cover Marvell's accused products.

Finally, although it purportedly asserts Claim 10 has been infringed, Plaintiff failed to provide any claim chart for Claim 10, merely claiming that each accused product "necessarily infringes Claim 10." This is a clear violation of Rule 3-1(c), which requires a chart that maps "each limitation of each asserted claim." Plaintiff's assertion is not only incorrect but improperly requires the Court and Marvell "to assume the existence of certain elements in the accused products." *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 89957, at *5-*6 (N.D. Cal. Jul. 29, 2010). Plaintiff cannot justify its failure to chart Claim 10 on lacking Marvell's documents; Patent L.R. 3-1 is designed to elicit early contentions from a patentee before a defendant produces its documents under Patent L.R. 3-4.

Marvell has asked Plaintiff to supplement its claim charts. Plaintiff flatly refused. Its refusal has prejudiced Marvell, leaving Marvell to craft non-infringement positions with insufficient guidance as to how Plaintiff contends the accused products infringe. Thus, Marvell seeks an order striking Plaintiff 's inadequate contentions and claim charts. If the Court declines to strike, Marvell respectfully requests that Plaintiff be ordered to supplement its charts and contentions, and that Marvell be allowed 30 days to supplement its invalidity contentions.

**France Telecom's Position:** France Telecom's infringement contentions fully satisfy Patent L.R. 3-1(c) by showing that the Marvell devices perform "turbo coding," as France Telecom's invention is widely known, in accordance with 3G telecommunications industry standards. Marvell admits on its website that its accused devices operate in accordance with these standards, which require turbo coding and set forth how to perform it. Such standards compliance is not just equivalent to reverse engineering, it is adequate to support a final judgment of infringement. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("We hold that a district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. We agree that claims should be compared to the accused product to determine infringement. However, if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product."); *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1272, 1275-76 (Fed. Cir. 2004). Therefore it also satisfies the Patent Local Rules.

Indeed, with respect to Claim 1, France Telecom's claim charts are sufficiently detailed to support summary judgment of Marvell's infringement. The claim charts analyze Marvell's

infringement element by element, applying every limitation of Claim 1 to the specific sections, tables, and figures specified and required by the 3G telecommunications standards (and thereby necessarily to each 3G compliant Marvell device). As the side-by-side diagram below demonstrates, for example, the structure for performing the turbo code encoding method specified in a relevant standard is identical to that disclosed and claimed in the patent:



**'747 Patent, Figure 1**  **3GPP Standard, Figure 4**

Marvell's argument that the charts "do not disclose how products complying with the standards perform 'two independent and parallel steps of systematic convolutional coding'" is visibly incorrect. As the above figures demonstrate, both the patented and 3GPP Standard turbo code encoder implement two independent and parallel steps of systematic convolutional coding (the first and second systematic coders 11, 13 in the '747 Patent, and the 1st and 2nd constituent encoders in the 3GPP standard). The standards and claim charts go even further than shown in these figures and specify the method of the accused encoder in precise detail, down to the smallest bit. And even if these steps were not set forth as fully as they actually are presented in the standards and claim charts, Marvell's own patents demonstrate that a person of ordinary skill in the art would readily recognize the presence of two independent and parallel steps of systematic convolutional coding. *See* U.S. Pats. Nos. 8,266,488 ("A turbo-encoder may perform systematic coding with recursive and systematic convolutional codes."); 8,214,715 ("A turbo encoder, included in a transmitting device, may include two recursive systematic convolutional (RSC) encoders."); 8,086,945 ("decoder may include two systematic convolutional decoders."). That is enough to put Marvell on notice of the specifics of Plaintiff's infringement theory, and therefore Plaintiff has satisfied its obligations under the Patent Local Rules. Marvell's argument regarding the meaning of "systematic" merely raises a claim construction or technical dispute that must be deferred to claim construction proceedings or to summary judgment or trial, and which is not appropriate for resolution at this stage. Indeed, the fact that Marvell makes a claim construction argument at this point demonstrates that France Telecom's ICs are sufficient.

With respect to Claim 10, to comply with the letter as well as the spirit of the Patent Local Rules, France Telecom notified Marvell that it believes that the accused chips also infringe Claim 10 (subject to further discovery) because it is not aware of any turbo code decoder that would not infringe the decoder recited in Claim 10. Marvell does not dispute this fact. Instead, Marvell cites *Bender v. Maxim Integrated Products*, No. C 09-1152SI, 2010 U.S. Dist. LEXIS 89957 (N.D. Cal. July 29, 2010), but this case recognizes that reverse engineering is not required when

3

it is impracticable. *See id.* at *13-*14 (citing *Intamin, Ltd. v Magnetar Techs. Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007)). France Telecom understands that (contrary to Marvell's suggestion) Marvell's technical documentation and reference designs are subject to Marvell's unusually restrictive NDAs and are not publicly available. Prior to France Telecom serving its ICs, Marvell failed to provide any information regarding the specific implementation of its turbo code decoder, and has even refused to provide a single chip, specification, or other information from which the operation of the accused devices could be directly determined, despite the fact that France Telecom issued document requests for, and Marvell already agreed to provide, such information seven months ago. *See Cambridge Prods., Inc. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992) ("Without the aid of discovery, any further information [concerning the accused method] was not practicably obtainable."). Accordingly, France Telecom's met its obligation to "pinpoint [its] contentions 'as specific[ally] as possible" given the information available to it. *See Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160, at *20 (N.D. Cal. Nov. 30, 2012).

## II.     France Telecom's Contentions on Doctrine of Equivalents & Indirect Infringement

**Unresolved Issue**: Whether France Telecom's disclosure of infringement under the doctrine of equivalents and indirect infringement comply with Patent L.R. 3-1(e) & (d).

**Marvell's Position**: Instead of properly disclosing "[w]hether each limitation of each asserted claim" is alleged to be present in the accused products under the doctrine of equivalents, Plaintiff improperly uses boilerplate language to reserve this alternate theory of infringement. Plaintiff 's infringement contention on the doctrine of equivalents is only a general reservation that the accused products "also infringe under the doctrine of equivalents." This does not satisfy Patent L.R. 3-1(e). *See, e.g.*, *Creagri, Inc. v. Pinnaclife Inc.*, No. 11-cv-06635-LHK-PSG, 2012 U.S. Dist. LEXIS 158540, at *17 (N.D. Cal. Nov. 2, 2012) ("[Plaintiff] cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory."). Plaintiff was required to provide a "limitation-by-limitation of analysis" regarding the doctrine of equivalents. *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C-05-00334, C-05-02298, C-06-00244 RMW, 2008 U.S. Dist. LEXIS 123187, at *41 (N.D. Cal. Dec. 29, 2008). It failed to do so. Plaintiff offers a new argument – not presented in its ICs – that the doctrine of equivalents must "necessarily" be met because the accused products comply with the 3G standards. Under its view, any standard-compliant product would necessarily infringe a standards patent under the doctrine of equivalents. This argument is circular and unsupported by any authority. Thus, Marvell is left to guess the limitations Plaintiff contends are present under the doctrine of equivalents and Plaintiff's theories.

Similarly, instead of providing "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement," Plaintiff again uses boilerplate language in an improper attempt to reserve the right to argue indirect infringement without disclosure. It makes conclusory assertions that Marvell "encouraged these third parties and end users to purchase and to use the accused products," but does not explain how it contends Marvell actively induced or contributed to actual infringement by others through such acts. These allegations do not describe "how [Marvell's] customers infringed the patent[] in suit, which claims they infringed, or how [Marvell] induced that infringement." *See Cal. Inst. of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc.*, No. 4:10-CV-05067, 2011 U.S. Dist. LEXIS 154627, at *8 (N.D. Cal. Sept. 1, 2011). Although it is not required to prove its case at this stage of the proceedings, Plaintiff must

"articulate with specificity the claims and theory of a plaintiff's infringement claims" to comply with Patent L.R. 3-1. *See Theranos*, 2012 U.S. Dist. LEXIS 172160, at *7. It failed to do so, leaving Marvell to guess how Plaintiff contends that Marvell indirectly infringes.

If it had a basis for its contentions that any claim element was met by the accused products under the doctrine of equivalents or that any claim was indirectly infringed by Marvell, Plaintiff was required to disclose them. As a result of Plaintiff's failure to do so, Marvell has been prejudiced in preparing its Patent L.R. 3-3 disclosures and in preparing its defense in this case. The Court should strike Plaintiff's assertions of infringement under the doctrine of equivalents and indirect infringement. Given the short schedule to trial in this case, allowing Plaintiff to withhold its contentions until a later date unfairly prevents the parties from efficiently proceeding.

**France Telecom's Position:** With respect to the doctrine of equivalents, the Federal Circuit's holding in *Fujitsu* recognized that Marvell "is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard." *See Fujitsu*, 620 F.3d at 1327. Rather than being boilerplate, France Telecom's doctrine of equivalents allegations follow the standards set forth in *Fujitsu* and fully satisfy the Patent Local Rules.

While Marvell is free to argue in accordance with *Fujitsu* that its products are somehow compliant with the 3G standards but do not literally fall within the scope of the language of the standards and claims, there is no way for France Telecom to anticipate what Marvell's claim construction or other arguments will be. Even so, as France Telecom has explained to Marvell, Marvell's accused processes must necessarily "contain elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 40 (1997). That is, in order to interoperate with other 3G standards-compliant turbo encoders and decoders, any Marvell element that Marvell contends deviates from the literal language of the claims must perform substantially the same function, in substantially the same way, to accomplish substantially the same result. *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 608 (1950). Otherwise Marvell's products would not work. Marvell's cited cases either antedate *Fujitsu* or are inapposite to infringement allegations relying on standards compliance.

With respect to indirect infringement, France Telecom has provided (i) identification of direct infringers and (ii) detailed descriptions of the acts of the indirect infringers that are inducing or contributing to infringement. Far from being boilerplate, France Telecom's highly detailed indirect infringement allegations run from pages 4 to 6 of its infringement contentions, identifying, with specificity, Marvell customers, telecommunications carriers, and consumers who directly infringe and how they have done so. Plaintiff has further specified, in detail, the activities that Marvell has engaged in to induce or contribute to that direct infringement. Because Marvell has admitted that it has, and has long had, actual knowledge of the patent-in-suit, *see, e.g.,* Amended Answer to Complaint (D.I. 23) at 3, ¶16, it is hard to imagine what theory Marvell could possibly put forth in support of a position that it is not inducing and contributing to that infringement since it designs, produces, and sells the infringing chips.

This case involves the very first U.S. patent for an invention, turbo coding, that has been widely recognized by engineers, including by the IEEE and the Marconi Society, as a fundamental advance in telecommunications comparable to Ethernet, the World Wide Web, or public key cryptography. The accused instrumentalities and their manner of infringement have long been apparent to all parties. Marvell's tactical decision to try to delay this case by filing this motion has no merit whatsoever, and should be rejected.

DATED: April 8, 2013

Respectfully submitted,

*/s/ Joseph J. LoBue*
Jeffrey M. Fisher (State Bar No. 155284)
jfisher@fbm.com
Alex Reese (State Bar No. 280530)
areese@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel.: (415) 954-4400
Fax.: (415) 954-4480

Henry C. Lebowitz (admitted *pro hac vice*)
henry.lebowitz@friedfrank.com
James W. Dabney (admitted *pro hac vice*)
james.dabney@friedfrank.com
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSEN, LLP
One New York Plaza
New York, NY 10004
Tel: (212) 859-6600
Fax.: (212) 299-6650

Joseph J. LoBue (admitted *pro hac vice*)
joseph.lobue@friedfrank.com
Elliot E. Polebaum (admitted *pro hac vice*)
elliot.polebaum@friedfrank.com
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSEN, LLP
801 17th Street, N.W.
Washington D.C. 20006
Tel.: (202) 639-7000
Fax.: (202) 639-7003

***Attorneys for Plaintiff***
***FRANCE TELECOM S.A.***

Respectfully submitted,

*/s/ Eric Huang*
Kevin P.B. Johnson (State Bar No. 177129)
kevinjohnson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th floor
Redwood Shores, CA 94065
Tel.: (650) 801-5000
Fax.: (650) 801-5100

Raymond N. Nimrod (admitted *pro hac vice*)
raynimrod@quinnemanuel.com
Eric Huang (admitted *pro hac vice*)
erichuang@quinnemanuel.com
Krista M. Rycroft (admitted *pro hac vice*)
kristarycroft@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
Fax.: (212) 849-7100
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

***Attorneys for Defendant***
***Marvell Semiconductor, Inc.***

**ATTESTATION CLAUSE**

I, Eric Huang, am the ECF User whose ID and password are being used to file this JOINT DISCOVERY LETTER BRIEF. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Joseph J. LoBue, attorney at Fried, Frank, Harris, Shriver & Jacobsen, LLP, concurred in this filing.

Dated: April 8, 2013                          QUINN EMANUEL URQUHART
                                                      & SULLIVAN, LLP

                                                      By:   */s/ Eric Huang*
                                                               Eric Huang