Pages 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael M. Cousins, Magistrate Judge

FRANCE TELECOM S.A.,            )
                                )
            Plaintiff,          )
                                )
  VS.                           )      NO. C 12-04967 WHA (NC)
                                )
MARVELL SEMICONDUCTOR, INC.,    )
                                )
            Defendant.          )
_____  )

San Francisco, California
Wednesday, April 17, 2013

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

                    FARELLA, BRAUN & MARTEL LLP
                    235 Montgomery Street - 17th Floor
                    San Francisco, California 94104
          BY:  **JEFFREY M. FISHER, ATTORNEY AT LAW**

                    FRIED, FRANK, HARRIS, SHRIVER
                      & JACOBSON LLP
                    801 17th Street NW
                    Washington, D.C.  20006
          BY:  **JOSEPH J. LOBUE, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1    **APPEARANCES**: (CONTINUED)

2    For Defendant:

3                                  QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                                   555 Twin Dolphin Drive - 5th Floor
                                   Redwood Shores, California  94065

4                        **BY:  KEVIN P. B. JOHNSON, ATTORNEY AT LAW**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>Wednesday - April 17, 2013</u>                    <u>1:24 p.m.</u> |
| 2 | **P-R-O-C-E-E-D-I-N-G-S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Civil 12-4967, France Telecom SA |
| 5 | versus Marvell Semiconductor, Incorporated. |
| 6 | **THE COURT:**  Good afternoon. |
| 7 | **MR. JOHNSON:**  Good afternoon, Your Honor. |
| 8 | **MR. LOBUE:**  Good afternoon, Your Honor. |
| 9 | **MR. JOHNSON:**  I'm Kevin Johnson from Quinn Emanuel on |
| 10 | behalf of Marvell. |
| 11 | **THE COURT:**  Thanks for being here. |
| 12 | **MR. LOBUE:**  And Joe LoBue with Fried, Frank for France |
| 13 | Telecom. |
| 14 | **THE COURT:**  Good afternoon. |
| 15 | **MR. FISHER:**  Jeffrey Fisher, Farella Braun & Martel, |
| 16 | also here for France Telecom. |
| 17 | **THE COURT:**  Good afternoon, Mr. Fisher. |
| 18 | All right.  We're here on two discovery matters on a |
| 19 | referral from Judge Alsup, Letter Briefs 69 and 70; 69 concerns |
| 20 | the protective order with a proposed protective order from |
| 21 | Marvell with -- there are two disputed issues within the |
| 22 | protective order.  Any undisputed issues, I think they were |
| 23 | focused on in the two remaining ones.  And then Docket 70 |
| 24 | concerns the infringement contentions from France Telecom in |
| 25 | 3-1(c), (d), and (e) of the Local Rules, whether the |

1   infringement contentions are sufficient or not.

2       Let's take those sort of one at a time starting with the

3   protective order, and I have reviewed the parties' arguments on

4   that, as well as the proposed form of protective order from

5   Marvell.

6       One question.  I want to make sure that the protective

7   order that's been submitted is the full -- that's got every

8   issue in it that you want to have in it?

9           **MR. JOHNSON:**  Yes, Your Honor.

10          **THE COURT:**  In other words, it's ready to be signed if

11  I went your way?

12          **MR. JOHNSON:**  Yes, Your Honor.

13          **THE COURT:**  All right.  My tentative view is, these

14  are questions of discretion and each case is different and, of

15  course, based on the particular facts of the case, so the Court

16  does not -- you both have argued about what the standard

17  protective order is and whether there's a basis to go away from

18  it or not.

19      My view is to grant the modifications as proposed by

20  Marvell finding that they're not very far away from standard

21  ones imposed by the Court, and that there is a basis in the

22  facts of this case to have them; and that if they are imposed,

23  they're not going to change the status quo very dramatically,

24  either a short period for the notice on the highly confidential

25  materials to give a further chance to slow that process down a

1    little bit but not a lot; the prosecution bar, the fact that

2    it's a one-year period, and prosecution bars have been adopted

3    by this court in other cases that that's not a dramatic

4    addition to the protective order.

5         So I'm inclined to grant both of those, but I'll give you

6    a chance, you probably don't want to say much about it, but to

7    tell me why that's, you know, unfair and unreasonable.

8              **MR. LOBUE:**  Fair enough, Your Honor.

9         Well, again, I think your first point was the most

10   important.  It's that each case has to be determined

11   individually.  Marvell's approach had been it's a standard

12   order and, therefore, it should be included for that reason;

13   and France Telecom just disagrees with that.

14        And we think in these particular circumstances, because

15   this is a -- again, each patent case sort of has its own life.

16   Our view is this is a very simple case.  This is a case that

17   will involve very high-level documents.  We've already agreed

18   to a source code provision, so that won't be an issue at all.

19        Again, we don't think we'll go down that path.  We don't

20   think we'll need to go down that path because this is really a

21   standards compliance case.

22        And, so, our concern is that, in a case like this, it

23   causes more problems than it solves by having these more

24   stringent provisions in here.  For example, for me to -- if my

25   client does not want one of their attorneys to be barred from

1    prosecuting patents, I'm going to have to litigate individual

2    documents because I may need them to see that and there may be

3    no -- or in our view there may be no good basis for that.

4         Just, again, just to give an example, because I think it's

5    important to understand the facts of a particular case --

6              **THE COURT:**  I agree.

7         **MR. LOBUE:**  -- we did get some documents in the

8    disclosure for the invalidity contentions, and -- now, this is

9    marked "Attorneys' Eyes Only" so I'm not going to read anything

10   in the record, but may I approach and give you a copy?

11             **THE COURT:**  Yes.  Pass it up.

12        **MR. LOBUE:**  This sort of represents what our concern

13   is.  This is on its own face, if you look at the header of the

14   document to the right, very top one, on almost every page it

15   talks about it being a high-level design document.

16        Now, nowhere on this document -- nowhere on this document

17   is there a header or caveat that this document should be

18   restricted in disclosure.  I'm talking about when the document

19   was prepared, not now; but when the document was prepared,

20   there's no indication at all that this should be limited

21   distribution or that it contains any proprietary information,

22   or anything like that.

23        But as it stands now, I could not -- I could not show this

24   document to in-house counsel at France Telecom or even to my

25   own outside expert without having to go through Marvell; and if

1    they disagreed, we'd have to litigate this issue.

2          And, again, in particular I'd like to point -- and that

3    goes for this whole document in general as a high-level

4    specification document.

5          But then if you go to, in particular, page 12, which is

6    individually marked -- and, again, I can't, because it is

7    "Attorneys' Eyes Only" now and this is not a sealed record, I

8    can't go into the details -- but this page in particular you

9    can take a look at this, Your Honor, and look and compare this

10   to the actual publicly available standards, and you can draw

11   your conclusions from that.

12         But, again, this is marked "Attorneys' Eyes Only," so I

13   just think in this case, again, and I understand Marvell's

14   position --

15         **THE COURT:**  And what's the prejudice?  All right.  So

16   I take your point.  What's the prejudice caused by that?

17         **MR. LOBUE:**  Well, the prejudices caused by it will

18   require -- I think it's an inefficient way for this particular

19   case.  Now, again, that's based on our view that a protective

20   order should be tailored to the particular case.

21         So the prejudice is that it will make the process less

22   efficient, more costly, more time-consuming for both the

23   parties and the Court; whereas, if this, for example, this

24   document -- if these two provisions weren't in the protective

25   order, I could at least show this to my expert without having

1   to even worry about the markings.  And, again, I think in this

2   case I think that would just make things a lot more

3   streamlined.

4          **THE COURT:**  At this point, of course, I know you're

5   not at the end of the proceedings.  You're close to the

6   beginning.

7          **MR. LOBUE:**  Right.

8          **THE COURT:**  How many other documents of this type that

9   are "Attorneys' Eyes Only" are there?

10          **MR. LOBUE:**  Well, almost everything produced so far

11   except for the publicly available, you know, prior art.  Those

12   are the things.

13      And, again, this is not an accusation with Marvell.  These

14   things in litigation, people have legitimate, you know, good

15   faith disputes on the way things should be marked.  And, so, I

16   think there isn't a high volume yet but, again, we don't have a

17   high volume of documents yet either.

18      And, again, we look at this as the protective order should

19   be a way to facilitate discovery, not a burden on discovery,

20   understanding that parties have legitimate right to protect

21   their proprietary information.

22      The other point I'd like to make is, when you look at the

23   facts of this case as opposed to your typical case,

24   France Telecom and Marvell are not competitors.  France Telecom

25   is an operator, telecommunications operator.  Marvell is a chip

1    manufacturer.  In fact, if there's any relationship at all,

2    we'd be an ultimate end user or customer.  So, I think, again,

3    considering that fact, the typical, what we'll call the typical

4    protections that might be afforded may not be as appropriate in

5    this case.

6         And the other fact is that, again, we have many, many

7    protections that we've agreed to that we think are legitimate

8    for this case, including source code, including nondisclosure

9    requirements, including limiting "Attorneys' Eyes Only"

10   material to make sure France Telecom technical people don't see

11   it.  Right now only the lawyers can see it.

12        THE COURT:  Isn't the point, though, that you're not

13   competitors a bit of a so what?  I mean, if information is

14   being shared with experts in the field who they might be

15   competitors or they might be experts who consult with

16   competitors, doesn't that really not negate the concerns raised

17   by Marvell?

18        MR. LOBUE:  No, it's a fair point, and it's true that

19   that's a certain -- I mean, in all of these situations it's a

20   balance of risk versus -- risk versus benefit of having the

21   provisions, so that's certainly a fair question.

22        The issue here, though, is that I think that this tilts --

23   given there's so many other protective provisions and, you

24   know, the expert will sign a nondisclosure agreement, the fact

25   that France Telecom itself is not a competitor or in many cases

1    where these provisions are included they are competitors, I

2    think that's just a factor that, again, when looking at the

3    specific facts of the case, would mitigate against these two

4    provisions.

5         **THE COURT:**  All right.  Anything you'd like to add to

6    the discussion?

7         **MR. JOHNSON:**  I'll keep it brief, Your Honor, very

8    quickly; but with respect to the document that France Telecom's

9    counsel handed me right before the hearing, I mean, this sort

10   of goes to the point.  This is a confidential document that

11   identifies -- it goes beyond the standard and identifies the

12   register settings and sort of the inner workings of what

13   happens inside of these chips, and it is confidential Marvell

14   information and it's exactly the kind of document that is

15   technical in nature that Marvell considers to be very important

16   and proprietary.

17       And even looking at the front page of the document it says

18   it's not approved by document control.  It's for review only.

19   So I haven't had the opportunity to investigate this document,

20   but this sort of, I think, proves the point; and when you look

21   at the two issues that are before Your Honor with respect to

22   the protective order, the expert -- all we're asking for is

23   notice and, you know, so the parties both have the opportunity.

24       And this happens in every one of my patent cases for as

25   long as I've been doing it.  Maybe it's just I've had a bad or

1   good run, whatever respect, but it's just notice provision.

2   There's no prejudice, I don't think, to either side.

3       And with respect to the prosecution bar, I'll say the same

4   thing.  The issue is the -- if in-house counsel have these

5   kinds of documents that are confidential Marvell documents and

6   they have the opportunity to be involved in prosecution of the

7   matter, even if they're not competitors, I mean, Marvell has

8   been sued by France Telecom here on a France Telecom patent;

9   and, so, it goes to the point as to the importance behind the

10  prosecution bar.

11      I will point out, Your Honor, with respect to the

12  prosecution bar, you asked me at the very beginning if this is

13  the protective order as we would submit it; and we had a

14  discussion out in the hallway right before we came in, and

15  page 15 of the proposal under prosecution bar where it talks

16  about the prosecution bar applying to both designated house

17  counsel or experts, we would be willing to strike "or experts."

18  Really the prosecution bar should be related to and restricted

19  to in-house counsel who are involved in prosecution.

20      And I don't know whether ultimately that was a typo or

21  not, but I think that restricting it to those people who are

22  involved I think is what the intent is.  Experts, I think, is a

23  little bit -- is a separate deal altogether.

24          **THE COURT:**  All right.  So you're making a friendly

25  amendment to take out the experts from the prosecution bar?

1          **MR. JOHNSON:**  That's right.  So all I would do is

2     delete "or experts" at line 6 on page 15 of what we submitted.

3          **THE COURT:**  All right.  Well, with that friendly

4     amendment, which I will strike from the order, I'm going to

5     grant the protective order proposed by Marvell in the modified

6     form.

7          Let's move on, then -- and if it turns out that in

8     practice this is a cumbersome thing and you're coming back here

9     every week with problems, then, of course, we can revisit that

10    if it turns out in practice that it's problematic.

11         And it will be primarily your conferring with each other

12    about the reasonableness if you have any problems that will

13    self-regulate whether we need to return here; but if it turns

14    out that this is -- we're overshooting in the protection that's

15    going to occur, then I'm happy to revisit that.

16         But in my experience we don't have many cases where this

17    is a recurring problem and the parties can't work it out

18    themselves once they have a protective order entered.  So

19    hopefully that won't be a problem; but if it is, we'll take it

20    up further.

21         All right.  So on to the infringement contentions, and

22    let's take those in order.  So Local Rules 3-1(c), (d), and (e)

23    are at issue; and starting with (c), there's interplay here

24    between the industry standard and what's been disclosed, and

25    there's not a lot of case law out there about -- there is

1   Federal Circuit case law supporting that a comparison to

2   industry standard could be a basis for liability, and that

3   might be sufficient.

4       But I want to have you each tell me a little bit more

5   about that interplay and why or why not the initial contentions

6   are sufficient.  I'll start with you, France Telecom, on the

7   sufficiency.

8            **MR. LOBUE:**  Yes, Your Honor.

9       I think probably the best place to start is the Federal

10  Circuit decision on this in *Fujitsu*.  And I'll actually just go

11  through that, and I know you're familiar with the case; but I

12  think --

13           **THE COURT:**  I've got it, but I'm interested in your

14  interpretation.

15           **MR. LOBUE:**  And, so, I think the first point is it's

16  interesting to see what the defendant in that case argued, and

17  that's on page 1326.  And I'll just read that:  (reading)

18           "As an initial matter, Netgear asks us to find no

19       evidence of direct infringement because the District Court

20       relied on the 802.11 standard rather than the accused

21       products in assessing infringement.

22           "Netgear argues that we should establish a rule

23       precluding the use of industry standards in assessing

24       infringement.

25           "Netgear argues that we should require a plaintiff to

1    separately accuse and prove infringement for all accused

2    products even if those products all comply with a standard

3    that is relevant to the patents in suit."

4    That was the argument of the defendant, and that was

5    rejected; and the Court -- again continuing on to page 1327,

6    the Federal Circuit stated:  (reading)

7         "We hold that a District Court may rely on an

8    industry standard in analyzing infringement.  If a

9    District Court construes the claims and it finds that the

10   reach of the claims includes any device that practices a

11   standard, then this can be sufficient for a finding of

12   infringement.

13        "We agree that claims should be compared to the

14   accused product to determine infringement; however, if an

15   accused product operates in accordance with a standard,

16   then comparing the claims to that standard is the same as

17   comparing the claims to the accused product."

18   They're the same.

19   And then another important point, I think, if you continue

20   along on that same page, the Federal Circuit points out that:

21   (reading)

22        "Public policy weighs in favor of this approach.  If

23   a Court determines that all implementations of a standard

24   infringe the claims of a patent, then it would be a waste

25   of judicial resources to separately analyze every accused

1       product that undisputed practice is the standard."

2          Again, Marvell's position in this case is that we must, in

3   making out our case, use an inefficient way to prove

4   infringement when the Federal Circuit has stated that there is

5   an efficient way to prove it that's available to plaintiffs.

6          At the contention stage we're not required to prove

7   infringement.  We're not required to prove any particular claim

8   construction.  We're required to state what our contentions are

9   for infringement, and it's very clear from our claim charts.

10         Well, first, that Marvell complies with 3G.  That's their

11  own admission; but, in any event, we don't have to prove that

12  at this stage.  In our claim construction, we state that the

13  Marvell products comply with the industry standard.  And then

14  we go down each element of the claim of the patent, Claim 1,

15  with each element of the standard and clearly each element of

16  the claim is met by the requirements of the standard.

17         And, so, for us to be required to do any more than we

18  could improve our infringement claim, at this stage it makes no

19  sense.  We could in theory win our case if we proved what was

20  in these contentions based on Federal Circuit law.

21         **THE COURT:**  Is there a case applying the Federal

22  Circuit *Fujitsu* at the Trial Court level and saying, "Given

23  that you can make this comparison to the industry standards,

24  here's how we define what should be disclosed," something under

25  the Local Rules?

1      **MR. LOBUE:**  No, there isn't, and part of the reason is

2    this is a relatively recent two-years-old case; but, also --

3    but I think the reasoning -- the reasoning of *Fujitsu* makes it

4    impossible, in my view, to come up with that holding, that this

5    kind of infringement contention is not sufficient for two

6    reasons.  One, the purpose of the infringement contentions is

7    to facilitate and streamline litigation.  It's not to make it

8    more difficult.

9        So when the Federal Circuit says there is a way to save

10   judicial resources and including the parties' resources, to

11   then say that the rules preclude that way, again, it seems to

12   me just incompatible with *Fujitsu*.

13     **THE COURT:**  Let me ask Marvell what your

14   interpretation is of the Federal Circuit case and also how it's

15   applied here in District Court.

16     **MR. JOHNSON:**  Sure.  So let me start by saying let's

17   talk about I heard France Telecom's counsel refer to efficient

18   way to prove infringement; and, so, what *Fujitsu* says at start

19   page 1327 is:  (reading)

20         "We acknowledge, however, that in many instances an

21       industry standard does not provide the level of

22       specificity required to establish that practicing that

23       standard would always result in infringement."

24   It goes on at 1328 at the top to say:  (reading)

25         "In these cases, the patent owner must compare the

1    claims to the accused products or, if appropriate, prove

2    that the accused products implement any relevant optional

3    sections of the standard.  This should alleviate any

4    concern about the use of standard compliance in assessing

5    patent infringement."

6    And then this is the important part:  (reading)

7        "Only in the situation where a patent covers every

8    possible implementation of a standard will it be enough to

9    prove infringement by showing standard compliance."

10   And here we have exactly the situation where the standard

11   isn't enough.  The claims need to be compared to the products.

12   There are optional aspects of the claims.

13   And, in fact, what we didn't talk about is Claim 10, which

14   is one of the asserted claims altogether.  I don't have any

15   claim charts on Claim 10, and Claim 10 is on the decoding side

16   and the standard doesn't cover the decode.  It doesn't talk

17   about the decoding side in that respect.

18   So France Telecom's argument is essentially if it encodes,

19   it must decode at some level; but as we can get into sort of

20   the details, there are elements that are not necessarily met by

21   looking at the standard.

22   And, so, from our standpoint, from a notice standpoint, to

23   comply with the Local Rules, what we're asking for is simply

24   compare the patents to the kind of information that we've

25   produced, which is the document that France Telecom's counsel

1    showed you at the beginning.

2        These type of encoding and decoding documents have been

3    produced in the case.  They're not part of any of the

4    infringement contentions on Claim 1 or on Claim 10.  I don't

5    have any tying or no effort was made to compare the claims to

6    the specific Marvell products or to tie it to specific

7    documents that have been produced in the case.

8        And, so, we're in a situation where, first of all, we

9    don't think that *Fujitsu* and *Dynacore* -- we're not standing

10   here -- I'm not standing here saying that standards -- we're

11   advocating that you can't use standards.  What we're here

12   saying is that when the standard is not enough, you need to

13   supplement; and here the standard isn't enough.

14       And in both *Dynacore* and *Fujitsu*, the Federal Circuit held

15   that the standard wasn't enough and noninfringement was found

16   in those situations because it didn't meet the requirements in

17   the claim.

18       So here we're -- I go back to the cases we cited, like

19   *Linex Techs* and *Pagemelding*, that from my standpoint, when you

20   look at the asserted claims and you look at the specific

21   limitations in the claims, for example, the limitation of two

22   independent and parallel steps of systematic convolutional

23   coding, that kind of information is contained in these kinds of

24   documents that have been produced.  It's not laid out in the

25   standard specifically.

1    And, so, what we've asked is that the infringement

2    contentions be stricken, and particularly when I don't have any

3    contentions on one of the two asserted claims that they made.

4    Claim 10 we don't have anything on.

5        So we don't see this as being inconsistent with *Fujitsu* or

6    *Dynacore*.  This falls squarely within the situation that they

7    articulate, which says when the standard is not enough, you

8    need to prove -- you need to compare it to the products; and

9    there simply has been made no effort to reverse engineer or

10   compare what's already been produced in the case.

11           **THE COURT:**  What about Claim 10?

12           **MR. LOBUE:**  Claim 10, again, we disclosed that claim

13   because we have a theory, a factual theory, and we disclosed

14   the theory that we have.  We didn't have any information about

15   that, so we were limited.  We were limited.  The case law makes

16   clear you're required to present whatever information's

17   reasonably available.

18       The decoding is not practical to reverse engineer.  We

19   would need proprietary information about the wiring of the

20   chips, which is even more proprietary than these

21   specifications.  So that wasn't practical.

22       So, yes, we stated very clearly we didn't have a claim

23   chart for 10.  We stated that our intent is absolutely to

24   supplement.  Absolutely.

25       Now, one point I do want to make on supplementation is

1    that counsel made a point that we should use these documents.

2    When we submitted our -- served our infringement contentions,

3    we had no documents from Marvell.  So that is something we

4    intend to do certainly as the case goes on.  We always

5    supplement our disclosures as we get more information, but we

6    couldn't have done that at the time because we simply didn't

7    have any documents from Marvell.

8         The other point that I would like to make is that the

9    discussion about whether a term means something or not, whether

10   this patent claim is covered by the standard, those are

11   technical noninfringement arguments and claim construction

12   arguments.

13        And even Marvell's own cases, in particular *Linex*, I think

14   it's at page 713, says that those type of arguments have no

15   place at the infringement contention stage.  They're free to --

16   they're free to make those arguments in summary judgment,

17   during trial.  In fact, the Federal Circuit addresses that and

18   says that they're free to prove these things at trial to show

19   that there's no infringement, which raises an interesting

20   burden-of-proof question down the road, but they're not

21   appropriate now.

22        And the other point I want to make is, this is very

23   important, because, in fact, the 3G standards are very, very

24   specific and very, very detailed and cover all of these points.

25   And just to show -- to prove that, if you would turn to,

1  Your Honor, page 1 of the second claim chart, Exhibit B --

2       **THE COURT:**  Uh-huh.

3       **MR. LOBUE:**  -- there was discussion about -- counsel

4  made reference that there was no descriptive -- there's no

5  indication that the standard requires systematic convolutional

6  coders in parallel.

7       If you look at the image, which is in the first box, the

8  image labeled 3GPP2C.S0002-0, Version 1, which is the big image

9  in the middle --

10      **THE COURT:**  Yes.

11      **MR. LOBUE:**  -- the fifth line, middle of the fifth

12  line, it says:  (reading)

13          "The turbo encoder of the 3G system employs two

14      systematic," systematic, "two systematic recursive

15      convolutional encoders connected in parallel with an

16      interleaver."

17      Those are the exact elements that counsel said were not

18  disclosed in the standard when, in fact, the standard requires

19  those.

20      And, again, this is sort of getting ahead of the game.

21  This would be for the experts and for the Court during claim

22  construction and during trial to decide.

23      **THE COURT:**  All right.  Well, I'm going to take this

24  under submission, review the Federal Circuit case law, and will

25  issue a ruling on that.

1          **MR. JOHNSON:**  If I could just respond very briefly.

2          **THE COURT:**  Yes.

3          **MR. JOHNSON:**  Again, there must have been a basis to

4     assert infringement Claim 10, and their infringement

5     contentions refer to supplementing.  We asked them to

6     supplement.  They refused.  So it's good to hear that they

7     are -- they're now willing to at some point.  I'm still not

8     hearing when that's going to occur.

9          But the claim elements, the limitations that counsel just

10    directed you to, Your Honor, on page 1 of that, you know, it

11    goes further than systematic convolutional coding; and I

12    pointed out it talks about the inputs and the outputs, and

13    there's no discussion of that in the standard.

14         And that's where these kinds of documents and the

15    technical documents are what's important.  I mean, we go back

16    to the intent of the rule is to provide notice to us about what

17    they're really alleging is infringement.

18         Just wait, with all due respect, looking at the standard

19    and picking and choosing and cutting and pasting from the

20    standard without pointing specifically to where in our products

21    and where in our documents they're alleging infringes, because

22    that has an effect obviously on our invalidity contentions, you

23    know, if they're alleging something that we think is overly

24    broad, then that means there's maybe different prior art that

25    we would have otherwise cited.

1    So it's just -- we don't want to be in a situation where

2    heading into trial we still don't know what the allegations are

3    in that respect.

4         **THE COURT:**  All right.  Thank you.

5         **MR. JOHNSON:**  Thank you.

6         **THE COURT:**  Turning to 3-1(d), the indirect

7    infringement contentions, and the assertion by Marvell is that

8    these are conclusory boilerplate questions whether

9    France Telecom should be ordered to make further, more specific

10   assertions.  And Judge Grewal has written on this topic; and

11   I'm probably pronouncing the name incorrectly, the *Creagri*

12   decision from November of 2012 goes into depth as to the

13   motivation for this part of the Local Rules.

14        So let me start with France Telecom as to why I shouldn't

15   order more specific disclosures.

16        **MR. LOBUE:**  Well, Your Honor, again, I think we should

17   turn to the disclosures themselves.  These are not -- they're

18   not boilerplate in any sense of the word.  They're particularly

19   tailored to this case.

20        In fact, we identify the specific operator customers and

21   the specific device customers; such as RIM, Samsung, AT&T,

22   Verizon Wireless, Sprint, T-Mobile, FOTO phone.  This is not a

23   generic boilerplate allegation at all.  This is specific to

24   this case.  These are the direct infringers and their consumer

25   customers.  It's very specific.

1    Boilerplate we would just say -- it would be completely

2  unrelated to the case.  It would say, "There are third-party

3  operators and manufacturers."  We don't do that.  We state

4  specifically who they are.

5    We also tailor the other aspects of these allegations

6  specifically to this case.  It's important to understand when

7  we allege here that the indirect infringement occurs because,

8  not that they advertise, but they advertise 3G, and 3G makes

9  clear that they infringe.

10    They advertised that they're compliant with U.S.

11  telecommunications carriers and U.S. standards and systems, not

12  just a boilerplate.  These are specific items that we're

13  referring to.  These are significant facts because if, in

14  fact -- if, in fact, we prove these facts -- and these are

15  contentions again.  We're not required to put in evidence at

16  that stage, and the case law is quite clear about that.

17    **THE COURT:**  So your contentions explain sort of how

18  Marvell induced or contributed infringement by others?

19    **MR. LOBUE:**  Well, sure.  Sure.  The contentions have

20  facts that support that.  The legal conclusion is that they

21  contribute or induce.  Well, if I test my product to make sure

22  it complies with U.S. standards or U.S. telecommunications, 3G

23  telecommunications standard, knowing, in fact, that our

24  patent's required for 3G, that's a fact that clearly

25  establishes inducement.

1     The same with the remainder of these things; testing with

2 carriers, individual carrier testing.  So AT&T says they need

3 a -- they need a device that works on our system.  That's a

4 U.S. system.  It's a 3G system.  Okay.  That's a fact.  We

5 proved that fact.  We proved indirect infringement.

6     So, again, we list out all the different factors which

7 would lead to a finding of contributory infringement or induced

8 infringement; and, again, we're not required to produce --

9 we're not required to prove these facts at this stage, but we

10 are required to list them.

11          **THE COURT:**  All right.  Marvell?

12          **MR. JOHNSON:**  Your Honor, the contentions don't

13 describe how Marvell is infringed or induced infringement.

14 They are -- it's a litany, it's a laundry list really, of

15 everything that possibly could pertain to inducement under the

16 case law.  There's nothing in there -- I go back to -- the

17 asserted claims, Your Honor, are method claims.  It's the acts

18 of infringement that are infringed, selling it.  You know, a

19 product -- the product itself doesn't infringe.

20     There are no specific acts that are alleged.  There is a,

21 like I said, a laundry list of walking through with conclusory

22 assertions without any reference to documents or evidence

23 again.  So I'm going into this and I'm -- I don't know what

24 they're alleging specifically with respect to the indirect

25 infringement claims.

1          And when you look at this Court's ruling, as Your Honor

2     pointed out, and Judge Grewal's ruling, and also the ruling in

3     the *California Institute of Computer Assisted Surgery*, and,

4     again, this is at Star page 4 and 5, there the contentions were

5     found deficient because CICAS does not describe how defendant's

6     customers infringed the patents in suit, which claims they

7     infringed, or how defendants infringed that infringement --

8     induced that infringement.  Its contentions are deficient.

9          We have the same situation here, Your Honor, and I am

10    again confronted with very conclusory language about what their

11    contentions are.

12             **THE COURT:**  All right.  That, too, I'm going to take

13    under submission.

14         Let's turn to 3-1(e), the Doctrine of Equivalents.  In

15    that same opinion by Judge Grewal about *Creagri*, he suggested

16    that the parties should either drop or add at this stage of the

17    proceedings where there's a similar amount of detail.

18         So let me ask France Telecom which direction it thinks it

19    should go as compared to Judge Grewal's instruction in that

20    case.

21             **MR. LOBUE:**  Well, we clearly -- in regards to the

22    rule, the rule says "state whether," one or the other,

23    "whether."  So we state our view is that it's literal

24    infringement.  So that's what we state.

25         Of course, there's claim construction issues that can

1    alter this, and it's way too early now to know what the Court

2    would rule as far as claim construction.  So, yes, our

3    contention is that there's literal infringement, and we think

4    that's quite clear from our claim charts.

5         So, again, the factor of claim construction is problematic

6    at this stage because if a claim is construed a certain way,

7    then it may be an equivalents issue as opposed to a literal

8    infringement issue.  So that certainly is an issue.

9         **THE COURT:**  Why have the rule if there's not going to

10   be more detail required at this part of the proceedings?

11        **MR. LOBUE:**  Well, we do disclose what our theory is,

12   and we make very clear what our theory is.  Our theory is

13   literal infringement.  So it's not like our allegation or our

14   compliance is unfair to Marvell.  We're telling them what we

15   think it is.

16        However, down the -- you know, clearly down the road when

17   we're at claim construction, positions could, you know, vary

18   slightly.  In fact, I'm sure Marvell's position would vary

19   depending on claim construction for the invalidity and other

20   reasons.

21        And I think -- and, again, this is not in the record, but

22   I'm almost certain that Marvell reserved the right expressly in

23   their invalidity contentions the same way we did that they can

24   change their contentions and update their contentions based on

25   claim construction.

1      So I think we comply with the rule.  The rule states --

2  the rule states you're to declare whether it's literal or

3  equivalents to give the other side fair notice, and that's what

4  we've done.  We've stated it's literal and we've reserved our

5  right, again, based on claim construction and other things, the

6  same way Marvell has reserved its right on its invalidity

7  contentions.

8      **THE COURT:**  Well, maybe I should grant you both

9  preserving your rights, because there's no such escape clause

10  in the rule, but I know parties always do that; and as long as

11  it's being -- goes both directions, perhaps there's no harm if

12  there's a foul.

13      What do you think?

14      **MR. JOHNSON:**  Well, I think, Your Honor,

15  France Telecom should be forced to choose.

16      And let's go back.  I mean, I don't have any allegations

17  with respect to Claim 10, Doctrine of Equivalents.  I have two

18  sentences in their infringement contentions that say, again

19  very boilerplate, that to the extent they're not literally

20  present, there are insubstantial differences and function-way

21  result.

22      You know, the Federal Circuit requires that Doctrine of

23  Equivalents be established on a limitation-by-limitation basis.

24  And, so, to the extent that there are issues with respect to

25  any particular limitations that France Telecom believes are

1    also present under the Doctrine of Equivalents, it's their

2    burden to come forward and explain what the basis is for the

3    insubstantial difference, what the basis is for function-way

4    result and why what they're accusing is equivalent to what is

5    disclosed in the patent, and there's no analysis of that in any

6    of these charts by their own admission.

7         **THE COURT:**  The rule just says "whether."  Does that

8    lead to a conclusion that there's less detail needed for this

9    particular one; whereas, the other rules don't have that kind

10   of fuzzy language to start?

11        **MR. JOHNSON:**  I've been on both sides of that, and

12   I've been in front of Judge Grewal on both sides of that, and I

13   think that there is -- there is -- there's room for less

14   detail, to be frank, but this is no detail what I have right

15   now.

16        And, so, you know, identifying -- identifying -- just

17   putting in the language which, I think, is -- everybody -- it's

18   almost meaningless in the sense is, what it's saying is, "I'm

19   not sure there's going to be Doctrine of Equivalents.  To the

20   extent there is, it's there."

21        Judge Grewal and Judge Koh precluded me in the

22   *Apple/Samsung* case from coming in and using a reservation of

23   rights like this and saying, "We're going to do it under the

24   Doctrine of Equivalents on a standards patent," and trying to

25   argue Doctrine of Equivalents saying, "You should have put that

1   in the contentions."

2           **THE COURT:**  Right.

3           **MR. JOHNSON:**  So, you know, I go back to what I have

4   in front of me right now is not a lot of information on what

5   specifically they claim to be equivalent.  And at the bare

6   minimum there needs to be some explanation of what is the basis

7   for the insubstantial difference, what is the basis for the

8   equivalents under the function-way-result test.

9           And here what's different, too, is, you know, I don't have

10  anything on Claim 10, and I keep saying that because they're

11  really -- to me that rises to the level that this -- and I

12  understand Your Honor may be leaning to maybe there's not a lot

13  of prejudice in letting them supplement and bring in and add

14  some more documents on some of the claims, but with respect to

15  Claim 10, we don't have anything.  There hasn't been any effort

16  made, and that should be stricken.  Those contentions on

17  Claim 10 should be stricken.

18          **THE COURT:**  All right.  Well, why shouldn't I, if

19  Judge Koh and Judge Grewal are treating Mr. Johnson's

20  contentions in the other case and requiring more, why shouldn't

21  I hold you to the same standard now?

22          **MR. LOBUE:**  Well, again, I think the rule says what it

23  says.  It says "whether," and we've stated "whether."  And I

24  think the question then becomes down the road whether we could

25  amend because we have good basis to do so, and it might be

1   claim construction.  There might be an argument down the road

2   to Judge Alsup or to yourself saying that, "Given the claim

3   construction, we amend to include -- we amend our infringement

4   contentions to include the following things."

5       That would not prejudice Marvell in the slightest because

6   until claim construction's done, you haven't -- you juggle

7   multiple theories anyway and multiple defenses.

8       So I think, again, there's no prejudice, and I think the

9   way the rules are written is what it is.  It says you declare

10  whether; and at some point you might have to go back, if things

11  change, and amend your contentions for good cause.  But I think

12  claim construction is good cause.

13      **THE COURT:**  All right.  Well, I'll take that under

14  submission, too, and we'll get back to you all very soon with

15  further guidance after reading the case law.  I appreciate your

16  time.

17      Anything else we should take up today?

18      **MR. JOHNSON:**  Not from my standpoint, Your Honor.

19  Thank you.

20      **MR. LOBUE:**  No, Your Honor.  Thank you.

21      **THE COURT:**  All right.  Thank you very much.  We're in

22  recess.

23          (Proceedings adjourned at 2:03 p.m.)

24          ---oOo---

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Monday, April 29, 2013

8

9

10

11    _____

12         Jo Ann Bryce, CSR No. 3321, RMR, CRR
                   U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25