UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FRANCE TELECOM, S.A.,

Plaintiff,

v.

MARVELL SEMICONDUCTOR, INC.,

Defendant.

Case No. 12-cv-04967 WHA (NC)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST TO AMEND PLAINTIFF'S INFRINGEMENT CONTENTIONS**

Re: Dkt. No. 70

The parties in this patent infringement action dispute the sufficiency of plaintiff France Telecom's infringement contentions. The issues are (1) whether France Telecom's use of the "industry standard" is sufficient under Patent Local Rule 3-1(c) to identify which elements of defendant Marvell Semiconductor's accused products infringe its patent; (2) whether France Telecom has sufficiently disclosed its theory of indirect infringement under Patent Local Rule 3-1(d); and (3) whether France Telecom's disclosure of infringement under the doctrine of equivalents complies with Patent Local Rule 3-1(e). Considering the parties' joint discovery letter brief and arguments at the April 17, 2013 discovery hearing, the Court GRANTS IN PART Marvell's request to compel France Telecom to amend its infringement contentions.

//

# I. BACKGROUND

France Telecom alleges that several of Marvell's products infringe upon Claims 1 and 10 of U.S. Patent No. 5,446,747 ("the '747 patent") entitled "Error-correction coding method with at least two systematic convolutional codings in parallel, corresponding iterative decoding method, decoding module and decoder." In its infringement contentions, France Telecom has submitted a chart in accordance with the Patent Local Rule 3-1(c), in order to identify where Marvell's accused products overlap with the elements of Claim 1. Dkt. No. 72. France Telecom states, however, that it "has not been able to make any direct comparison of the accused products to the '747 patent," and so has based its claim chart on two industry standards for the relevant technology, here, 3G telecommunications. *Id.* at 6. France Telecom also states that "each of the accused Marvell products necessarily infringes upon Claim 10 because the accused Marvell products are compatible with and capable of receiving and decoding transmissions transmitted by mobile telecommunications devices of other manufacturers which themselves comply with 3G standards." *Id.* In addition, France Telecom has disclosed its theory of indirect infringement under Patent Local Rule 3-1(d) and, under Patent Local Rule 3-1(e), asserted that Marvell's products infringe under the doctrine of equivalents, if not literally. *Id.* at 4-6.

Marvell moves to strike France Telecom's contentions as insufficient. It argues that the 3GPP and 3GPP2 industry standards alone are insufficiently specific and that the Northern District requires plaintiffs to disclose reverse engineering or its equivalent to satisfy Patent Local Rule 3-1(c). Dkt. No. 70 at 1-2. Marvell also disputes the sufficiency of France Telecom's disclosures regarding its theories of indirect infringement and infringement under the doctrine of equivalents. *Id.* at 4-5. In the alternative, Marvell seeks an order compelling France Telecom to supplement its disclosures and thirty days for Marvell to amend its invalidity contentions. *Id.* at 2.

# II. STANDARD OF REVIEW

Patent Local Rule 3 provides for patent disclosures early in a case and streamlines discovery by replacing the "series of interrogatories that [parties] would likely have

Case No. 12-cv-04967 WHA (NC)
ORDER RE: INFRINGEMENT
CONTENTIONS

2

propounded" without it. *Network Caching Tech. LLC v. Novell Inc.*, No. 01-cv-02079 VRW, 2002 WL 32126128, *4 (N.D. Cal. Aug. 13, 2002).  It is "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006).  In so doing, Patent Local Rule 3 "provide[s] structure to discovery and enable[s] the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-06635 LHK (PSG), 2012 WL 5389775, *2 (N.D. Cal. Nov. 2, 2012).

Patent Local Rule 3-1(c) requires a party claiming patent infringement to serve "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality . . . ."  If a party alleges its patent has been indirectly infringed, it must identify for each claim any direct infringement and describe the acts of the alleged indirect infringer that contribute to or induce the direct infringement.  Patent L.R. 3-1(d).  In addition, the party must disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  Patent L.R. 3-1(e).

Patent Local Rule 3 does not, however, "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case." *Creagri*, 2012 WL 5389775 at *2.  "But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim." *Id.*

### III. DISCUSSION

Where appropriate, courts treat a motion to strike as a motion to compel amendment to include additional information. *FusionArc, Inc. v. Solidus Networks, Inc.*, No. 06-cv-06760 RMW (RS), 2007 WL 1052900, *2 (N.D. Cal. Apr. 5, 2007); *see also Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. 03-cv-05709 JF, 2004 WL 2095698, *1 (N.D. Cal. Sept. 20, 2004) (referring motion to strike preliminary contentions to assigned magistrate judge, "[b]ecause the primary relief Defendants seek is an order compelling Plaintiff to provide

1  adequate disclosures").  Because the relief that Marvell seeks is adequate notice of how its

2  products allegedly infringe, and because Marvell asks alternatively for France Telecom to

3  supplement its contentions, the Court treats its requests in the joint letter brief as a motion to

4  amend.

5  **A.    France Telecom May Rely on Industry Standards to Disclose Its Theory of**

6  **Infringement.**

7          France Telecom asserts that it can use industry standards to show that Marvell's

8  accused products infringe its patent under *Fujitsu v. Netgear*, 620 F.3d 1321 (Fed. Cir.

9  2010).  In *Fujitsu*, the Federal Circuit stated unequivocally that "a district court may rely on

10  an industry standard in analyzing infringement."  *Id.* at 1327.  If a court can find

11  infringement based on its conclusion that the patent's claims "include[] any device that

12  practices a standard," *id.*, then at this phase of a case, prior to discovery, showing that a

13  patent's claims include the practice of a standard seems, as a matter of course, sufficient to

14  disclose plaintiff's theory of infringement.  No cases in this district have applied *Fujitsu*

15  explicitly in this procedural posture, although one court hypothesized that reliance on an

16  industry standard alone might be insufficient to satisfy the Patent Local Rules.  *See Implicit*

17  *Networks Inc. v. Hewlett-Packard Co.*, No. 10-cv-03746 SI, 2011 WL 3954809, *3 (N.D.

18  Cal. Sept. 7, 2011) ("This is likewise not a case where plaintiff is relying *only* on industry

19  standards to support its accusations . . . .") (emphasis added).  The Eastern District of Texas,

20  however, has found that "the use of an industry standard as the basis for infringement

21  contentions is permissible."  *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703,

22  709 (E.D. Tex. 2008).

23          The court in *Fujitsu* noted two exceptions to its rule: (1) where the "industry standard

24  does not provide the level of specificity required to establish that practicing that standard

25  would always result in infringement"; and (2) where "the relevant section of the standard is

26  optional, and standards compliance alone would not establish that the accused infringer

27  chooses to implement the optional section."  *Id.* at 1327-28.  Similarly, in *Linex*, despite

28  approving the use of industry standards as a basis for infringement contentions, the court

Case No. 12-cv-04967 WHA (NC)
ORDER RE: INFRINGEMENT                              4
CONTENTIONS

ultimately concluded that the 802.11n industry standard for wireless technology did not provide adequate notice of plaintiff's theory of infringement because plaintiff accused many different kinds of products, and defendant had established that even under the standard, the specific implementation of the 802.11n configurations was left to the designer of each product. 682 F. Supp. 2d at 708.

Marvell argues that by using the 3GPP and 3GPP2 industry standards to disclose how its products infringe the '747 patent, France Telecom fails to provide sufficient detail as to how the standards infringe. France Telecom asserts that its patent revolutionized communications, and that in order for Marvell's products to be compatible with other 3G technologies that they must necessarily infringe on France Telecom's patent. Marvell's argument asks the Court to make a determination as to the nature of the technology at issue and to characterize the industry standard as either unspecific or containing optional components. All the Court knows of this technology is what is contained in the parties' letter brief and infringement contentions. Thus it is premature for the Court to make such a categorization. In turn, France Telecom's argument asks the Court to make a legal conclusion that industry standards are sufficient to satisfy the requirements of Patent Local Rule 3-1(c). But as noted in *Fujitsu* and *Linex*, not all industry standards are created equal. The Court need not reach either conclusion because whether France Telecom refers to an industry standard or Marvell's actual products, Patent Local Rule 3-1(c) imposes the same burden.

### 1. Claim 1

Marvell overemphasizes the specificity requirement of Patent Local Rule 3-1(c). The Rule does not require France Telecom to reverse engineer every product it has accused. *Bender v. Freescale Semiconductor, Inc.*, 09-cv-01156 PHJ (MEJ), 2010 WL 1689465, *4 (N.D. Cal. Apr. 26, 2010) (noting that reverse engineering is not a per se requirement). "[A]n equivalent method that reveals on a claim by claim, element by element basis" plaintiff's theory of infringement is sufficient. *Id.* For example, in *Creagri*, the court found plaintiff's infringement contentions sufficient even though it did not provide the weight

ratios of the allegedly infringing chemical solution and relied exclusively on advertising materials for the facts of its contentions. 2012 WL 5389775 at *3. Similarly, in *FusionArc*, the district court denied defendant's motion to strike or amend the infringement contentions where plaintiff used marketing materials to determine how the accused product operated instead of reverse engineering. 2007 WL 1052900 at *1. And in *Bender v. Maxim Integrated Products, Inc.*, the court found that "reverse engineering or some equivalent" was likely the only option left to plaintiff, who had already amended his infringement contentions twice and still could not articulate his theory of infringement. No. 09-cv-01152 SI, 2010 WL 2991257, *5 (N.D. Cal. July 29, 2010).

The "equivalent" France Telecom uses here is Marvell's compliance with the 3GPP and 3GPP2 industry standards. France Telecom has mapped onto every limitation of Claim 1 the relevant elements of both the 3GPP and 3GPP2 standards. It has also included charts and figures for each standard showing the coding and flow of data for each limitation of Claim 1. In short, the 3GPP and 3GPP2 standards reveal "element by element" France Telecom's theory of Marvell's infringement of Claim 1. Although Marvell has grumbled about the level of detail of the standards, it has not shown or even argued that the implementation of the systematic coding central to the '747 patent was left to the individual designer or that the accused products vary in type, as was the case in *Linex*.

Furthermore, "there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). To satisfy the Patent Local Rules, therefore, France Telecom must identify how Marvell's "products infringe with as much specificity as possible *with the information currently available to it*." *Creagri*, 2012 WL 5389775 at *3 (emphasis added); *accord FusionArc*, 2007 WL 1052900 at *3 (denying defendant's motion to strike or amend plaintiff's infringement contentions because plaintiff had "provided all of the information in its possession as to how" defendant's product infringed and "disclosed, to the extent of its present knowledge, where it believes the infringement lies").

France Telecom asserts that it has not had the opportunity to make any direct comparison to Marvell's accused products, at least in part because Marvell has "unusually restrictive" non-disclosure agreements and that "technical documentation and reference designs . . . are not publicly available." Dkt. No. 70 at 4. Prior to France Telecom serving its contentions, Marvell "refused to provide a single chip, specification, or other information" from which France Telecom could do a direct comparison to the '747 patent. *Id.* As a result, France Telecom resorted to the industry standard to show the basis for its theory of infringement. Patent Local Rule 3 does not "require the disclosure of specific evidence." *Creagri*, 2012 WL 5389775 at *2. "Disclosure of the factual bases of its allegations is all that is required at this stage." *Id.* at *3. Thus, the Court finds France Telecom's infringement contentions regarding Claim 1 sufficient to satisfy Patent Local Rule 3-1(c).

### 2. Claim 10

France Telecom does not provide a claim chart for Claim 10. Rather, France Telecom argues that the accused products infringe because "it is not aware of any turbo code decoder that would not infringe the decoder recited in Claim 10." Dkt. No 70 at 3. This contention is, essentially, a repetition of Claim 10 of the '747 patent. Patent Local Rule 3-1(c) requires more than an "infringement contention that simply mimics the language of the claim." *Network Caching Tech. LLC v. Novell Inc.*, No. 01-cv-02079 VRW, 2002 WL 32126128, *6 (N.D. Cal. Aug. 13, 2002) (finding that an infringement contention which "in essence . . . has provided no further information to defendants than the claim language itself" was "plainly insufficient."). France Telecom must amend its contention of Marvell's infringement of Claim 10 by May 10, 2013. Marvell may also amend its invalidity contentions regarding Claim 10 by May 17, 2103.

### B. France Telecom Must Amend Its Contentions of Indirect Infringement.

Patent Local Rule 3-1(d) requires plaintiffs to disclose for each claim "any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Boilerplate language of indirect infringement will

not satisfy Patent Local Rule 3-1(d).  *Creagri*, 2012 WL 5389775 at *5.  France Telecom asserts that third party customers of Marvell directly infringe by using accused products or selling devices that contain accused products.  Dkt. No. 72 at 8.  It further discloses that Marvell has "induced and contributed to such infringement by . . . designing the accused products . . . managing the design . . . designing and testing the accused products specifically for compatibility and use within the United States . . . and advertising or representing to third parties that the infringing products are compatible or adapted for use within the United States."  *Id.*  With the exception of its assertion that Marvell engages in advertising, France Telecom's disclosure of indirect infringement merely restates its general theory of direct infringement.  Such "generic allegations" are insufficient to disclose a theory of indirect infringement.  *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792 PSG, 2012 WL 1309161, *2 (N.D. Cal. Apr. 16, 2012).  Furthermore, its disclosure is a bare-boned recitation of the essential elements of a claim for indirect infringement, and Rule 3-1(d) requires facts.  Patent L.R. 3-1(d) (requiring "a *description of the acts* of the alleged indirect infringer" and stating that "the role of each party must be *described*") (emphasis added); *see also Creagri*, 2012 WL 5389775 at *5 (finding indirect infringement contentions that stated defendant advised third parties to use the products in an infringing manner but failed to identify which advertisements led to infringing behavior was insufficient "boilerplate" language).  Accordingly, France Telecom must amend its disclosure of its indirect infringement theory also by May 10, 2013.

**C.   France Telecom Must Amend Its Disclosure of Infringement Under the Doctrine of Equivalents.**

Patent Local Rule 3-1(e) requires France Telecom to disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents."  In addition, "judges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket statements."  *OptimumPath, LLC v. Belkin Int'l, Inc.*, No. 09-cv-01398 CW, 2011 WL 1399257, *8 (N.D. Cal. Apr. 12, 2011) *aff'd*, 466 F. App'x 904 (Fed. Cir. 2012), *reh'g denied* (Apr. 6, 2012).  France

Telecom argues that it merely has to disclose "whether" it will assert a theory of infringement under the doctrine of equivalents. Although at least one case in this district suggests that a plaintiff's only stating "whether" it will assert a doctrine of equivalents theory is sufficient, recent cases require more specificity. *Compare Keithley v. The Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1151 (N.D. Cal. 2008) (finding contention that "[e]ach element of each asserted claim is either literally present in each of the accused websites and product, and/or is present under the doctrine of equivalents" sufficient) *with OptimumPath*, 2011 WL 1399257 at *8 (finding that "blanket statements" which failed to link similarities to particular claims or limitations in the relevant patent barred claim under doctrine of equivalents), *and CSR Tech. Inc. v. Freescale Semiconductor*, No. 12-cv-02619 RS (JSC), 2013 WL 503077, *8 (N.D. Cal. Feb. 8, 2013) (rejecting as insufficient under Rule 3-1(e) plaintiff's "boilerplate recitation" that "functionality is at most unsubstantially different from the claimed functionality").

Here, France Telecom states that Marvell's accused products infringe under the doctrine of equivalents because they "perform substantially the same function, in substantially the same way, to yield substantially the same result." Dkt. No. 72 at 9. France Telecom thus seeks to "reserve[] the right to assert a theory of infringement . . . under the doctrine of equivalents following claim construction." *Id.* As an initial matter, under no reading of the Patent Local Rules do they provide for a place holder to assert future claims of infringement. *Rambus Inc. v. Hynix Semiconductor Inc.*, No. 05-cv-00334 RMW, 2008 WL 5411564, *3 (N.D. Cal. Dec. 29, 2008) ("The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation."). Furthermore, "[t]he doctrine of equivalents exists to prevent a 'fraud on the patent'"; "it is not designed to give a patentee a second shot at proving infringement 'to the extent that any limitation is found to be not literally present.'" *Id.* (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950)). France Telecom's theory as currently disclosed is a formulaic statement of the doctrine of equivalent infringement. This is insufficient under the Patent Local Rules. *Creagri*, 2012 WL 5389775 at *6 (finding that a party "cannot merely add

boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory"). France Telecom must add facts and specify in what way Marvell's accused products infringe Claims 1 and 10 under the doctrine of equivalents by May 10, 2013, or drop the contention.

## IV. CONCLUSION

France Telecom's use of the industry standard to disclose how Marvell's accused products infringe Claim 1 of the '747 patent is sufficiently specific under Patent Local Rule 3-1(c). France Telecom must amend its infringement contention regarding Claim 10, and its theories of indirect infringement and infringement under the doctrine of equivalents by May 10, 2013, or they will be stricken. Marvell may amend its invalidity contentions to reflect any changes in France Telecom's disclosures by May 17, 2013.

Any party may object to this order within fourteen days. Fed. R. Civ. P. 72(a).

IT IS SO ORDERED.

Date: May 3, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge