UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCE TELECOM S.A.,

  Plaintiff,

v.

MARVELL SEMICONDUCTOR INC.,

  Defendant.

Case No.  12-cv-04967-WHO

**ORDER REGARDING REVISED FINAL JURY INSTRUCTIONS**

The parties have filed briefs regarding the Court's tentative final jury instructions.  France Telecom seeks modifications to tentative final instructions 32, 34, and 47.  Dkt. No. 288.  Marvell seeks modifications to tentative final instructions 23, 26, 27, 32, 33, 38, 42, 43, 44, and 45.  Dkt. No. 289.  Marvell also seeks two curative instructions.   Subject to the parties' argument, the Court intends to issue the following disputed final instructions.

CONTENTS[1]

Final Jury Instruction No. 23 Method Claims .................................................................. 3

Final Jury Instruction No. 26 Direct Infringement .......................................................... 4

Final Jury Instruction No. 27 Infringement—Extraterritoriality ...................................... 5

Final Jury Instruction No. 32 Inducing Patent Infringement ............................................ 6

Final Jury Instruction No. 33 Contributory Infringement ................................................ 8

Final Jury Instruction No. 34 Willfulness ......................................................................... 9

Final Jury Instruction No. 38 Invalidity—Improper Inventorship .................................. 11

Final Jury Instruction No. 42 Damages—Reasonable Royalty—Definition .................... 12

Final Jury Instruction No. 43 Damages—Availability of Non-Infringing Alternatives ..... 15

Final Jury Instruction No. 44 Damages—Extraterritoriality ............................................ 16

Final Jury Instruction No. 45 Damages—Instances Of Direct Infringement .................... 17

Final Jury Instruction No. 47 Damages—Laches Defense .............................................. 18

Marvell's Proposed Curative Instruction No. 1 Damages Are Not to Punish ................... 19

Marvell's Proposed Curative Instruction No. 2 Argument Is Not Evidence ..................... 20

United States District Court
Northern District of California

---

[1] If necessary, the instructions will be renumbered to correct for any gaps resulting from instructions not given or given in a different order than what was requested.

1
2
3
4
5
6
7
8
9
10
11
12

United States District Court
Northern District of California

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FINAL JURY INSTRUCTION NO. 23

### METHOD CLAIMS

The asserted claim in this case describes a method, and is therefore referred to as a "method" claim. Method claims recite a series of steps that comprise the patented invention.  The word "comprises" in this context means "includes at least."  That is, if a method includes all of the steps that are described by a patent claim, the method is described by the claim even though it may also include additional steps. The claim asserted in this case—claim 1—is a method claim.

**Court's analysis:**
Marvell objects to the term "other" in the phrase "…the method is described by the claim even though it may also include *other or* additional steps."  I do not intend to use the term "or other."

3

United States District Court
Northern District of California

# FINAL JURY INSTRUCTION NO. 26

## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent.  A method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claim.  The second step is to decide whether an accused direct infringer has used a method covered by the asserted claim of the '747 patent within the United States.  If it has done so, it infringes.  You, the jury, make this decision.

You have heard evidence about Marvell Semiconductor's commercial products and methods. However, in deciding the issue of patent infringement, you may not compare the Marvell Semiconductor products to the figures in the patents.  Your decision must be based on a comparison of the accused methods to the asserted claim.

Whether or not an accused direct infringer knew the method infringed or even knew of France Telecom's patents does not matter in determining direct infringement.

**Court's analysis:**
Marvell seeks to add the underlined language on the grounds that "[t]hroughout the trial, France Telecom repeatedly attempt to compare the accused products to the patent figures.  A jury instruction is necessary to correct the misimpression this may have caused."  Dkt. No. 289 at 1.  I agree.  France Telecom has repeatedly referenced Figure 1 of the '747 patent.  Instructing the jury that its infringement determination may not be based the patent figures, rather than the claims, is warranted.  The proposed language is an accurate statement of the law.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 27**

**INFRINGEMENT—EXTRATERRITORIALITY**

A U.S. Patent does not have extraterritorial effect.  <u>In other words, it cannot be enforced against conduct that takes place outside of the United States, and an accused infringer cannot be liable for the wholly foreign manufacture and sale of products that would otherwise infringe a U.S. Patent had those activities happened in the United States.</u>  France Telecom must prove that Marvell Semiconductor engaged in conduct within the United States that infringed the '747 patent or actively induced or contributed to infringement of the '747 patent.  Because claim 1 is a method claim, each step of claim 1 must be practiced entirely within the United States in order for you to find infringement.

**Court's analysis:**
Marvell wants to add the following underlined language to this instruction:

> A U.S. Patent does not have extraterritorial effect.  <u>In other words, it cannot be enforced against conduct that takes place outside of the United States, and an accused infringer cannot be liable for the wholly foreign manufacture and sale of products that would otherwise infringe a U.S. Patent had those activities happened in the United States.</u>  Because claim 1 is a method claim, each step of claim 1 must be practiced entirely within the United States in order for you to find infringement.  <u>Marvell Semiconductor cannot be found to have infringed based on accused products that are never used to perform all method steps of the '747 patent when incorporated into finished devices such as smartphones in the United States</u>.

The first underlined sentence appropriately instructs the jury on the meaning of the term "extraterritorial" and it is accepted.  The second sentence, however, is unnecessary as this and other instructions adequately explain that infringement of a method claim requires that each step of the claim must be used in the United States.

# FINAL JURY INSTRUCTION NO. 32

## INDUCING PATENT INFRINGEMENT

France Telecom argues that Marvell Semiconductor has actively induced another to infringe the '747 patent. In order for Marvell Semiconductor to induce infringement, Marvell Semiconductor must have induced another to directly infringe claim 1 of the '747 patent; if there is no direct infringement by a third party, there can be no induced infringement. This means that some third party must practice each and every step of the accused method within the United States.

In order to be liable for inducement of infringement, Marvell Semiconductor must:

(1)     have intentionally taken action that actually induced direct infringement by a third party;

(2)     have been aware of the '747 patent;

(3)     have known that the acts it was causing would infringe the patent; and

(4)     not have had a good faith belief the patent was invalid or not infringed.

If the four requirements just stated are not met, Marvell Semiconductor cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of the '747 patent, it believed the '747 patent to be valid, and it deliberately chose to avoid learning the truth. To prove inducement, it is not enough that Marvell Semiconductor was merely indifferent to the possibility that its actions might encourage infringement of a valid patent. Nor is it enough that Marvell Semiconductor took a risk that was substantial and unjustified.

Evidence that Marvell Semiconductor believed in good faith the '747 patent was not infringed or believed in good faith that the '747 patent was invalid may lead you to conclude that Marvell Semiconductor did not know that the accused acts constituted patent infringement.

**Court's analysis:**
France Telecom contends that lines 12 through 16 contain a "confusing doubly conditional double negative" and that it misstates the law. I disagree. The language is from the Model Patent Jury Instructions for the Northern District of California and I do not believe that the language is unduly confusing to the jury. Moreover, the model instruction was drafted in June 2014, well after the authorities cited by France Telecom, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011) and *Commil USA, LLC v. Cisco Systems, Inc*, 720 F.3d 1361 (Fed. Cir. 2013). France Telecom contends that *Commil USA* "is likely to be reversed by the Supreme Court." Even if that were the case, until that happens, *Commil USA* is binding on this Court.

Marvell argues that addition of the phrase "mere evidence of United States sales of finished products containing the accused product is not enough" is warranted to ensure that the jury does not find that "the inclusion of accused products in finished devices in which they *could* be used is sufficient for indirect infringement liability." I disagree. The instructions adequately state that indirect infringement requires proof of direct infringement by a third party.

United States District Court
Northern District of California

Marvell also argues that the following language is necessary to avoid a determination on indirect infringement that is contrary to law:

> One cannot induce infringement unintentionally.   In order to establish active inducement of infringement, it is not sufficient that a third party directly infringed the claim.   Nor is it sufficient that Marvell Semiconductor was aware of the act(s) by the third party that allegedly constitute the direct infringement.   Rather, in order to find active inducement of infringement, you must find either that Marvell Semiconductor specifically intended the third party to infringe the '747 patent or that Marvell Semiconductor believed there was a high probability that the third party would infringe the '747 patent, but deliberately avoided learning the infringing nature of the third party's acts.   The mere fact, if true, that Marvell Semiconductor knew or should have known that there was a substantial risk that the third party's acts would infringe the '747 patent would not be sufficient for active inducement of infringement.

I am not convinced.  The instruction already states the knowledge required for induced infringement and that it is insufficient that Marvell took a risk that was substantial and unjustified. The Model Instruction does not contain the language Marvell requests.  The current language sufficiently ensures that the jury does not lower the bar for finding indirect infringement.

**FINAL JURY INSTRUCTION NO. 33**

**CONTRIBUTORY INFRINGEMENT**

France Telecom argues that Marvell Semiconductor has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

As with inducement, in order for there to be contributory infringement by Marvell Semiconductor, someone other than Marvell Semiconductor must directly infringe a claim of the '747 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '747 patent, then contributory infringement exists if:

(1)      Marvell Semiconductor supplied an important component of the infringing part of the accused method;

(2)      the component is not a common component suitable for non-infringing use; and

(3)      Marvell Semiconductor supplied the component with knowledge of the '747 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**Court's analysis:**
Marvell contends that the following language is necessary because the knowledge requirement for induced and contributory infringement is the same:

> As with induced infringement, evidence that Marvell Semiconductor believed in good faith that the '747 patent was not infringed or believed in good faith that the '747 patent was invalid may lead you to conclude that Marvell Semiconductor did not know that the accused acts constituted patent infringement.

Marvell raised this argument previously, and I rejected it.  As I stated  then, subsection (3) adequately states the requirement that Marvell have knowledge that the component was made or adapted for use in an infringing manner.  Dkt. No. 234 at 15.  This instruction mirrors the Model Patent Jury Instructions for the Northern District of California.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 34**

**WILLFULNESS**

In this case, France Telecom argues that Marvell Semiconductor willfully infringed the '747 patent.

If you have decided that Marvell Semiconductor has infringed, you must go address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine that it is highly probable that Marvell Semiconductor acted recklessly.

To prove that Marvell Semiconductor acted recklessly, France Telecom must prove two things are highly probable:

The first part of the test is objective: France Telecom must persuade you that Marvell Semiconductor acted despite a high likelihood that its actions infringed a valid and enforceable patent.  In making this determination, you may not consider Marvell Semiconductor's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate that Marvell Semiconductor was not reckless.

Only if you conclude that the Marvell Semiconductor's conduct was reckless do you need to consider the second part of the test.  The second part of the test does depend on the state of mind of Marvell Semiconductor.  France Telecom must persuade you that Marvell Semiconductor actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  To determine whether Marvell Semiconductor had this state of mind, consider all facts which may include, but are not limited, to:

(1) Whether or not Marvell Semiconductor acted in accordance with the standards of commerce for its industry;

(2) Whether or not Marvell Semiconductor intentionally copied a product of France Telecom that is covered by the '747 patent;

(3) Whether or not there is a reasonable basis to believe that Marvell Semiconductor did not infringe or had a reasonable defense to infringement;

(4) Whether or not Marvell Semiconductor made a good-faith effort to avoid infringing the '747 patent, for example, whether Marvell Semiconductor attempted to design around the '747 patent; and

(5) Whether or not Marvell Semiconductor tried to cover up its infringement.

**Court's analysis:**
A defense that could not have existed at the time of infringement is not legitimate or credible.  I therefore agree with France Telecom that the legitimate or credible defenses to which Marvell can point to rebut the objective prong of willfulness must have been available at the time of

infringement.  But that does not mean that Marvell has to establish its actual state of mind or that it asserted those defenses at the time.  For example, a defendant's eventual claim construction, noninfringement, or invalidity positions may support legitimate or credible defenses rebutting a charge of willfulness.  While the defendant did not take those positions at the time of the infringement, there is no reason that they could not have. In contrast, a defense of laches based on the plaintiff's conduct *after* the infringement could not have existed at the time of infringement and cannot rebut willfulness.  To the extent a laches defense is based on conduct before the infringement, that defense is available.  I expect the parties to stay within those parameters in their closing arguments.  Revising the instruction is not necessary.

France Telecom contends that willfulness can be found by a preponderance of the evidence, rather than by clear and convincing evidence.  It argues that because the Supreme Court rejected the "clear and convincing evidence" standard for awarding attorneys' fees under 35 U.S.C. § 285 in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct.1749, 1758 (2014), the "clear and convincing evidence" standard likewise no longer governs willfulness. But the relevant discussion in *Octane Fitness* related specifically to fee awards, not willful infringement. I am aware of no court, controlling or otherwise, that has applied the preponderance standard to willfulness.  The Supreme Court or the Federal Circuit may at some time apply *Octane Fitness* to the willfulness inquiry and lower the burden.  But until that happens, willfulness must still be proven by clear and convincing evidence.

While the objective willfulness prong is a threshold issue, there is no requirement that I resolve the objective prong before presenting willfulness questions to the jury.  *See, e.g., Samsung v. Apple. See, e.g., Apple, Inc. v. Samsung Electronics Co.*, 920 F. Supp. 2d 1079, 1107 (N.D. Cal. 2013) ("the Court sent the subjective prong of willfulness to the jury, and the jury found that Samsung's infringement was subjectively willful for five of the seven patents . . . . Thus, for these five patents, the Court must find the objective prong also satisfied in order to make an ultimate finding of willfulness.").  Accordingly, I will present the willfulness questions to the jury before determining whether the legal elements are satisfied.

United States District Court
Northern District of California

10

**FINAL JURY INSTRUCTION NO. 38**

**INVALIDITY—IMPROPER INVENTORSHIP**

Marvell Semiconductor can meet its burden of proving that the '747 patent is invalid by showing that the patent fails to name all actual inventors.  This is known as the "inventorship" requirement.

Anyone who makes a significant contribution to the conception of one or more claims of the patent is an inventor.  Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent.  However, merely helping with experimentation by carrying out the actual inventor's instructions or explaining the actual inventor's well-known concepts or the current state of the art does not make someone an inventor.

~~Proving improper inventorship requires corroboration by some independent evidence—for example, by the testimony of someone other than the potential inventor, by some physical record such as written notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record.~~

**Court's analysis:**
The third paragraph (including the underlined language which Marvell seeks to add) is deleted from this instruction.  It is Marvell's burden to present evidence sufficient to meet the inventorship defense.  The Court does not need to instruct the jury how Marvell can meet its burden.

United States District Court
Northern District of California

# FINAL JURY INSTRUCTION NO. 42

## DAMAGES—REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product in the United States, both past and future. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales. At the time of the hypothetical negotiation, the parties would only know the past sales; they would not have known what future sales would be.

Another way to calculate a royalty is to determine what is called an "ongoing" or "running royalty." To calculate an ongoing or running royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then determine what amount per unit in dollars (or fractions of dollars) the parties would have agreed to in the hypothetical negotiation. Multiplying this amount by the number of products sold will provide the total damages.

An ongoing or running royalty differs from payment of an lump sum because, with an ongoing or running royalty, the licensee pays based on the number of actual licensed products it sells. For example, if the patent covers a nail, and the nail sells for $1.00, you might find that the parties would have agree to a per unit royalty of 1 cent in a hypothetical negotiation. If the licensee sold 200 nails, the damages owed would be $2.00 (200 times 1 cent).

In determining a reasonable royalty, you may consider the following factors:

(1)     The royalties received by France Telecom for the licensing of the '747 patent, proving or tending to prove that an established royalty exists.

(2)     The rates paid by Marvell Semiconductor for the use of other patents comparable to the '747 patent.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

12

(4)     France Telecom's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between France Telecom and Marvell Semiconductor, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect, if any, of selling the patented specialty in promoting sales of other products of Marvell Semiconductor, the existing value of the invention to France Telecom as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the '747 patent and the term of the license.

(8)     The established profitability of products, if any made under the patent, their commercial success, and the current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the France Telecom, and the benefits to those who have used the invention.

(11)     The extent to which Marvell Semiconductor has made use of the invention and any evidence probative of the value of that use.

(12)      The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Marvell Semiconductor.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as France Telecom) and a licensee (such as Marvell Semiconductor) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to

pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.


**Court's analysis:**
Marvell requests that the instruction be modified to include the sentence "Depending on the evidence, you may find that the ongoing or running royalty should be capped at a certain amount, regardless of the number of actual sales."  Marvell proposed this language originally and I rejected it.  Dkt. No. 234 at 25, 27.  Nothing since then warrants reconsidering that determination.  The instruction as written mirrors the Court's Model Instruction.

**FINAL JURY INSTRUCTION NO. 43**

**DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES**

One of the factors that would have been considered during the reasonable royalty hypothetical negotiation is the availability of acceptable non-infringing alternatives to the patented technology. Not all alternatives are acceptable non-infringing alternatives. To be an acceptable non-infringing alternative, the alternative must have been acceptable to both the party and its customers. Also, the alternative must have been available to the party, meaning the party must have had the capability of implementing the alternative.  However, an acceptable non-infringing alternative need not have actually been produced, marketed, or sold during the period of infringement, so long as it was available to the party. To determine whether there were acceptable non-infringing alternatives, you may consider the following:

(1) Whether the alternative was available around the time of the hypothetical negotiation;

(2) Whether the effects of using the alternative were known in the industry;

(3) Whether the alternative would have had the advantages of the patented invention;

(4) Whether customers would have accepted the alternative;

(5) Whether the party had the necessary equipment, know-how, and experience to implement the alternative; and

(6) The time and cost to the party of implementing the alternative.


**Court's analysis:**
Marvell seeks to add the following language: The existence of one or more non-infringing alternatives can reduce the reasonable royalty because the alleged infringer would have been in a stronger position to negotiation knowing it had an alternative available to it.  This is a matter that Marvell can argue but it is unnecessary for the instruction.

# FINAL JURY INSTRUCTION NO. 44

## DAMAGES—EXTRATERRITORIALITY

U.S. patent law does not operate outside the United States.  Patent infringement damages compensate only for the consequences of domestic activity.  Thus, you may not award damages based on the wholly foreign manufacture, sale, offer for sale or use of an accused product that would otherwise infringe if such activity occurred within the United States.

**Court's analysis:**

Marvell requests that the instruction be modified to include following language:

> France Telecom contends that Marvell Semiconductor has infringed by selling accused products outside the United States that are later imported by third parties into the United States in finished products, such as mobile phones.   Only those accused products that are actually shipped into the United States in finished products and then used in an infringing manner in the United States can give rise to damages.

Marvell proposed this language originally and I rejected it.  Dkt. No. 234 at 29.  Nothing since then warrants reconsidering that determination.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 45**

**DAMAGES—INSTANCES OF DIRECT INFRINGEMENT**

If you find infringement, you may award damages only where France Telecom has proved that Marvell Semiconductor or a third party has used the accused method within the territory of the United States.  France Telecom must prove the extent of such infringing use with reasonable certainty because the amount of awardable damages must be correlated with the extent the accused method has been used in the United States.  In other words, you should award only those damages that France Telecom establishes that it more likely than not suffered.

**Court's analysis:**

Marvell requests that the instruction be modified to include following language:

> Any estimate by France Telecom of how many accused products manufactured abroad are shipped into and used in the United States must be established with some degree of certainty.  It cannot be speculative.

Marvell proposed this language originally and I rejected it.  Dkt. No. 234 at 30.  I reject it again for the same reason.

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 47**

**DAMAGES—LACHES DEFENSE**

[Not given]

**Court's analysis:**
In order to conserve judicial resources, I previously rejected France Telecom's request to sever the laches defense from the rest of the trial due to the significant overlap between evidence related to laches and evidence related to willfulness.  Presenting all the evidence at once has indeed preserved judicial resources.  But now that the evidence is in, I do not need an advisory verdict on this topic.

18

**MARVELL'S PROPOSED CURATIVE INSTRUCTION NO. 1**

**DAMAGES ARE NOT TO PUNISH**

I would like to remind you again that, if you were to find infringement, damages may only be awarded to compensate for the actual infringement that took place and may not go beyond that amount. Under the law, damages cannot be used to punish a party or to deter others from similar conduct.

**Court's analysis:**
Final Instruction 41 already states "You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer."  There is no reason to repeat that admonition.  This proposed curative instruction is DENIED.

**MARVELL'S PROPOSED CURATIVE INSTRUCTION NO. 2**

**ARGUMENT IS NOT EVIDENCE**

I would like to remind you again that the arguments of the lawyers are not evidence. In the opening statements and during other times at trial you heard that France Telecom notified Marvell Semiconductor that it should take a license from it in 2008, and that there were discussions between the parties until 2012. The content of those discussions regarding Marvell's response to invalidity or infringement of the patent is not admissible for purposes of proving any damages. To the extent that France Telecom's lawyers anything about what Marvell Semiconductor

**Court's analysis:**
I have already instructed the jury that arguments of the lawyers are not evidence and that content of those discussions between Marvell and France Telecom is not admissible.  There is no reason to repeat that instruction.  This proposed curative instruction is DENIED.

      **IT IS SO ORDERED**.

Dated: September 29, 2014



_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California