UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCE TELECOM S.A.,

             Plaintiff,

     v.

MARVELL SEMICONDUCTOR INC.,

             Defendant.

Case No.  12-cv-04967-WHO

**FINAL JURY INSTRUCTIONS**

United States District Court
Northern District of California

## Contents

Final Jury Instruction No. 1. Duty Of Jury ............................................................... 4

Final Jury Instruction No. 2. What Is Evidence ........................................................ 5

Final Jury Instruction No. 3. What Is Not Evidence .................................................. 6

Final Jury Instruction No. 4. Evidence For Limited Purpose..................................... 7

Final Jury Instruction No. 5. Demonstratives Not Received In Evidence ................... 8

Final Jury Instruction No. 6. Direct And Circumstantial Evidence ........................... 9

Final Jury Instruction No. 7. Ruling On Objections ................................................. 10

Final Jury Instruction No. 8. Credibility Of Witnesses ............................................ 11

Final Jury Instruction No. 9. Impeachment Evidence—Witness .............................. 12

Final Jury Instruction No. 10. Deposition In Lieu Of Live Testimony..................... 13

Final Jury Instruction No. 11. Expert Opinion ........................................................ 14

Final Jury Instruction No. 12. Burden Of Proof—Preponderance Of The Evidence.... 15

Final Jury Instruction No. 13. Burden Of Proof—Clear And Convincing Evidence.... 16

Final Jury Instruction No. 14 Summary Of Contentions........................................... 17

Final Jury Instruction No. 15 Method Claims .......................................................... 18

Final Jury Instruction No. 16 Interpretation Of Claims ............................................ 19

Final Jury Instruction No. 17 Infringement—Burden Of Proof................................ 21

Final Jury Instruction No. 18 Direct Infringement ................................................... 22

Final Jury Instruction No. 19 Infringement—Extraterritoriality............................... 23

Final Jury Instruction No. 20 Literal Infringement .................................................. 24

Final Jury Instruction No. 21 Inducing Patent Infringement..................................... 25

United States District Court
Northern District of California

Final Jury Instruction No. 22 Contributory Infringement ................................................... 26

Final Jury Instruction No. 23 Willfulness ........................................................................... 27

Final Jury Instruction No. 24 Invalidity—Burden Of Proof .............................................. 28

Final Jury Instruction No. 25 Invalidity—Prior Art .......................................................... 29

Final Jury Instruction No. 26 Invalidity—Obviousness...................................................... 30

Final Jury Instruction No. 27 Invalidity—Improper Inventorship ..................................... 33

Final Jury Instruction No. 28 Damages—Burden Of Proof ................................................ 34

Final Jury Instruction No. 29 Damages—Reasonable Royalty—Definition ...................... 35

Final Jury Instruction No. 30 Damages—Availability of Non-Infringing Alternatives ................ 38

Final Jury Instruction No. 31 Damages—Extraterritoriality............................................... 39

Final Jury Instruction No. 32 Damages—Instances Of Direct Infringement...................... 40

Final Jury Instruction No. 33 Damages —Date of Commencement.................................... 41

Final Jury Instruction No. 34 Damages—Laches Defense ................................................. 42

Final Jury Instruction No. 35 Damages—End Of Damages Period..................................... 43

Final Jury Instruction No. 36 Taking Notes ....................................................................... 44

Final Jury Instruction No. 37 Duty To Deliberate ............................................................. 45

Final Jury Instruction No. 38 Consideration Of Evidence—Conduct Of Jury .............................. 46

Final Jury Instruction No. 39 Communication With Court ................................................. 47

Final Jury Instruction No. 40 Return Of Verdict ............................................................... 48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

**FINAL JURY INSTRUCTION NO. 1.**

**DUTY OF JURY**

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**FINAL JURY INSTRUCTION NO. 2.**

**WHAT IS EVIDENCE**

As I mentioned at the outset, the evidence you are to consider in deciding the facts consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits which are received into evidence; and

(3)     any facts to which the lawyers have agreed.

**FINAL JURY INSTRUCTION NO. 3.**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding the facts. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are intended to help you interpret the evidence. But these arguments and statements are not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**FINAL JURY INSTRUCTION NO. 4.**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may have been admitted for a limited purpose only. You must consider it only for that limited purpose and for no other.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 5.**

**DEMONSTRATIVES NOT RECEIVED IN EVIDENCE**

Certain demonstrative slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these slides and determine the facts from the underlying evidence.

**FINAL JURY INSTRUCTION NO. 6.**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTION NO. 7.**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side though that it was not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

**FINAL JURY INSTRUCTION NO. 8.**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness's testimony;

(6)     the reasonableness of the witness's testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**FINAL JURY INSTRUCTION NO. 9.**

**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

United States District Court
Northern District of California

12

# FINAL JURY INSTRUCTION NO. 10.

## DEPOSITION IN LIEU OF LIVE TESTIMONY

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**FINAL JURY INSTRUCTION NO. 11.**

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### FINAL JURY INSTRUCTION NO. 12.

### BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court
Northern District of California

15

1

2

**FINAL JURY INSTRUCTION NO. 13.**

**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FINAL JURY INSTRUCTION NO. 14

## SUMMARY OF CONTENTIONS

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

As I previously told you, France Telecom seeks money damages from Marvell Semiconductor for allegedly infringing the '747 patent by using a method within the United States that France Telecom argues are covered by claim 1 of the patent.  That is the asserted claim of the '747 patent. France Telecom also argues that Marvell Semiconductor has actively induced infringement of this claim of the '747 patent by others and contributed to the infringement of this claim of the '747 patent by others.  The methods that are alleged to infringe are turbo coding methods used for channel coding by certain Marvell Semiconductor communication processor chips that are incorporated into third party devices such as smart phones.

Marvell Semiconductor denies that it has infringed the asserted claim of the '747 patent and argues that, in addition, the asserted claim is invalid.  Invalidity is a defense to infringement.

Your job is to decide whether the asserted claim of the '747 patent has been infringed and whether the asserted claim is invalid.  If you decide that the claim has been infringed and is not invalid, you will then need to decide any money damages to be awarded to France Telecom to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

17

1

2

**FINAL JURY INSTRUCTION NO. 15**

3

**METHOD CLAIMS**

The asserted claim in this case describes a method, and is therefore referred to as a "method" claim.
Method claims recite a series of steps that comprise the patented invention.  The word "comprises" in
this context means "includes at least."  That is, if a method includes all of the steps that are
described by a patent claim, the method is described by the claim even though it may also include
additional steps. The claim asserted in this case—claim 1—is a method claim.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 16**

**INTERPRETATION OF CLAIMS**

Before you decide whether Marvell Semiconductor has infringed claim 1 of the '747 patent or whether that claim is invalid, you will need to understand the patent claim. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claim involved in this case. You must accept those interpretations as correct. For some terms, the parties agreed on a construction. You must also accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

Now I will read you the claim terms and their respective meanings:

| Claim Term | Meaning |
|---|---|
| convolutional coding | coding that associates to each source data element at least one coded data element which is a combination of the source data element and at least one previous source data element |
| data element | a single unit of data |
| source [digital] data element | data element to be coded by the claimed method |
| systematic convolutional coding | convolutional coding where the output includes both the coded data and the current input data |
| temporally interleaving said source data elements | modifying the order of the source data elements |

You have been given a list of these terms and their meanings. For claim terms for which I have not provided you with any meaning, you should apply the claim term's plain and ordinary meaning to a person of ordinary skill in the art.

United States District Court
Northern District of California

The claim defines the scope of the patent.  You must read the claim in the same way when you analyze infringement and when you analyze invalidity.

United States District Court
Northern District of California

## FINAL JURY INSTRUCTION NO. 17

### INFRINGEMENT—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether France Telecom has proven that Marvell Semiconductor has infringed claim 1 of the '747 patent. To prove infringement of the claim, France Telecom must persuade you that it is more likely than not that Marvell Semiconductor has infringed the claim.

# FINAL JURY INSTRUCTION NO. 18

## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent.  A method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claim.  The second step is to decide whether an accused direct infringer has used a method covered by the asserted claim of the '747 patent within the United States.  If it has done so, it infringes.  You, the jury, make this decision.

You have heard evidence about Marvell Semiconductor's commercial products and methods.  Your decision must be based on a comparison of the accused methods to the asserted claim, not a comparison of Marvell Semiconductor's products to the figures of the '747 patent.

Whether or not an accused direct infringer knew the method infringed or even knew of France Telecom's patents does not matter in determining direct infringement.

**FINAL JURY INSTRUCTION NO. 19**

**INFRINGEMENT—EXTRATERRITORIALITY**

A U.S. Patent does not have extraterritorial effect.  In other words, it cannot be enforced against conduct that takes place outside of the United States, and an accused infringer cannot be liable for the wholly foreign manufacture and sale of products that would otherwise infringe a U.S. Patent had those activities happened in the United States.  France Telecom must prove that Marvell Semiconductor engaged in conduct within the United States that infringed the '747 patent or actively induced or contributed to infringement of the '747 patent.  Because claim 1 is a method claim, each step of claim 1 must be practiced entirely within the United States in order for you to find infringement.

**FINAL JURY INSTRUCTION NO. 20**

**LITERAL INFRINGEMENT**

To decide whether Marvell Semiconductor's accused method literally infringes claim 1 of the '747 patent, you must compare the accused method with the patent claim and determine whether each and every requirement of the claim is included in that method.  Every requirement of that method must be performed by a single person or entity.  If so, then Marvell Semiconductor's method literally infringes the claim.  If, however, Marvell Semiconductor's method does not have every requirement in the patent claim, that method does not literally infringe that claim.

The word "comprises" in this instruction, and in claim 1 of the '747 patent, means "includes."  That is, if an accused method *includes* steps that are identical to the steps described by claim 1 of the '747 patent, infringement is not avoided by the presence of *additional* steps in an accused method.

**FINAL JURY INSTRUCTION NO. 21**

**INDUCING PATENT INFRINGEMENT**

France Telecom argues that Marvell Semiconductor has actively induced another to infringe the '747 patent.  In order for Marvell Semiconductor to induce infringement, Marvell Semiconductor must have induced another to directly infringe claim 1 of the '747 patent; if there is no direct infringement by a third party, there can be no induced infringement.  This means that some third party must practice each and every step of the accused method within the United States.

In order to be liable for inducement of infringement, Marvell Semiconductor must:

(1)      have intentionally taken action that actually induced direct infringement by a third party;

(2)      have been aware of the '747 patent;

(3)      have known that the acts it was causing would infringe the patent; and

(4)      not have had a good faith belief the patent was invalid or not infringed.

If the four requirements just stated are not met, Marvell Semiconductor cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of the '747 patent, it believed the '747 patent to be valid,  and it deliberately chose to avoid learning the truth.  To prove inducement, it is not enough that Marvell Semiconductor was merely indifferent to the possibility that its actions might encourage infringement of a valid patent.  Nor is it enough that Marvell Semiconductor took a risk that was substantial and unjustified.

In deciding whether the Marvell Semiconductor induced infringement, you may consider whether

Marvell Semiconductor actually believed that the acts it encouraged did not infringe the patent,

and whether Marvell Semiconductor had a good-faith belief that the patent would be held invalid.

**FINAL JURY INSTRUCTION NO. 22**

**CONTRIBUTORY INFRINGEMENT**

France Telecom argues that Marvell Semiconductor has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe a patent claim.

As with inducement, in order for there to be contributory infringement by Marvell Semiconductor, someone other than Marvell Semiconductor must directly infringe claim 1 of the '747 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '747 patent, then contributory infringement exists if:

(1)    Marvell Semiconductor supplied an important component of the infringing part of the accused method;

(2)    the component is not a common component suitable for non-infringing use; and

(3)    Marvell Semiconductor supplied the component with knowledge of the '747 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FINAL JURY INSTRUCTION NO. 23**

**WILLFULNESS**

In this case, France Telecom argues that Marvell Semiconductor willfully infringed the '747 patent.

If you have decided that Marvell Semiconductor has infringed, you must go address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine that it is highly probable that Marvell Semiconductor acted recklessly.

To prove that Marvell Semiconductor acted recklessly, France Telecom must prove two things are highly probable:

The first part of the test is objective: France Telecom must persuade you that Marvell Semiconductor acted despite a high likelihood that its actions infringed a valid and enforceable patent. In making this determination, you may not consider Marvell Semiconductor's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate that Marvell Semiconductor was not reckless.

Only if you conclude that the Marvell Semiconductor's conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of Marvell Semiconductor. France Telecom must persuade you that Marvell Semiconductor actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether Marvell Semiconductor had this state of mind, consider all facts which may include, but are not limited to:

(1) Whether or not Marvell Semiconductor acted in accordance with the standards of commerce for its industry;

(2) Whether or not Marvell Semiconductor intentionally copied a product of France Telecom that is covered by the '747 patent;

(3) Whether or not Marvell Semiconductor made a good-faith effort to avoid infringing the '747 patent, for example, whether Marvell Semiconductor attempted to design around the '747 patent; and

(4) Whether or not Marvell Semiconductor tried to cover up its infringement.

27

**FINAL JURY INSTRUCTION NO. 24**

**INVALIDITY—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Marvell Semiconductor has proven that claim 1 of the '747 patent is invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of claim 1, Marvell Semiconductor must persuade you that it is highly probable that the claim is invalid.

During this case, Marvell Semiconductor has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '747 patent. Marvell Semiconductor contends that such prior art invalidates claim 1 of the '747 patent. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '747 patent. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Marvell Semiconductor's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTION NO. 25**

**INVALIDITY—PRIOR ART**

Prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention.

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

1
2

# FINAL JURY INSTRUCTION NO. 26

## INVALIDITY—OBVIOUSNESS

3
4
5
6

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was first made.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of communications and error correction coding who knew about all this prior art would have come up with the claimed invention.

7
8

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

9
10

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was first made. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

11

(1)     the levels of education and experience of persons working in the field;

12

(2)     the types of problems encountered in the field; and

13

(3)     the sophistication of the technology.

14
15
16

France Telecom contends that the level of ordinary skill in the field was a computer scientist or engineer with a master's degree (or a bachelor's degree and equivalent on-the-job experience) in electrical engineering, computer science, or a related field with one to three years of experience in error correction technologies.

17
18

Marvell Semiconductor contends that the level of ordinary skill in the field was a person having at least (1) a Master's degree in electrical engineering or a related field (2) with at least three years' experience in communications.

19
20
21
22

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art to the '747 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

23
24

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

25
26

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

27
28

United States District Court
Northern District of California

(1)      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)      Whether the invention satisfied a long-felt need;

(3)      Whether others had tried and failed to make the invention;

(4)      Whether others invented the invention at roughly the same time;

(5)      Whether others copied the invention;

(6)      Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7)      Whether the invention achieved unexpected results;

(8)      Whether others in the field praised the invention;

(9)      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10)      Whether others sought or obtained rights to the patent from the patent holder; and

(11)      Whether the inventor proceeded contrary to accepted wisdom in the field.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you. However, there must be a sufficient nexus—that is, a connection—between any factor you consider and the claimed invention.  If France Telecom has not shown that a factor is directly related to the claimed invention, this factor should not be considered in your obviousness determination.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Marvell Semiconductor has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the

claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

**FINAL JURY INSTRUCTION NO. 27**

**INVALIDITY—IMPROPER INVENTORSHIP**

Marvell Semiconductor can meet its burden of proving that the '747 patent is invalid by showing that the patent fails to name all actual inventors.  This is known as the "inventorship" requirement.

Anyone who makes a significant contribution to the conception of one or more claims of the patent is an inventor.  Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent.  However, merely helping with experimentation by carrying out the actual inventor's instructions or explaining the actual inventor's well-known concepts or the current state of the art does not make someone an inventor.

# FINAL JURY INSTRUCTION NO. 28

## DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Marvell Semiconductor infringed a valid claim of the '747 patent, you must then determine the amount of money damages to be awarded to France Telecom to compensate it for the infringement.

The amount of those damages must be adequate to compensate France Telecom for the infringement but no more.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

France Telecom has the burden to persuade you of the amount of its damages.  You should award only those damages that France Telecom more likely than not suffered.  While France Telecom is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  France Telecom is not entitled to any damages that are remote or speculative.

**FINAL JURY INSTRUCTION NO. 29**

**DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product in the United States, both past and future.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.  At the time of the hypothetical negotiation, the parties would only know the past sales; they would not have known what future sales would be.

Another way to calculate a royalty is to determine what is called an "ongoing" or "running royalty."  To calculate an ongoing or running royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then determine what amount per unit in dollars (or fractions of dollars) the parties would have agreed to in the hypothetical negotiation.  Multiplying this amount by the number of products sold will provide the total damages.

An ongoing or running royalty differs from payment of an lump sum because, with an ongoing or running royalty, the licensee pays based on the number of actual licensed products it sells.  For example, if the patent covers a nail, and the nail sells for $1.00, you might find that the parties would have agree to a per unit royalty of 1 cent in a hypothetical negotiation.  If the licensee sold 200 nails, the damages owed would be $2.00 (200 times 1 cent).

In determining a reasonable royalty, you may consider the following factors:

(1)     The royalties received by France Telecom for the licensing of the '747 patent, proving or tending to prove that an established royalty exists.

(2)     The rates paid by Marvell Semiconductor for the use of other patents comparable to the '747 patent.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    France Telecom's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)    The commercial relationship between France Telecom and Marvell Semiconductor, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)    The effect, if any, of selling the patented specialty in promoting sales of other products of Marvell Semiconductor, the existing value of the invention to France Telecom as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the '747 patent and the term of the license.

(8)    The established profitability of products, if any made under the patent, their commercial success, and the current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the France Telecom, and the benefits to those who have used the invention.

(11)    The extent to which Marvell Semiconductor has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Marvell Semiconductor.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as France Telecom) and a licensee (such as Marvell Semiconductor) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**FINAL JURY INSTRUCTION NO. 30**

**DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES**

One of the factors that would have been considered during the reasonable royalty hypothetical negotiation is the availability of acceptable non-infringing alternatives to the patented technology. Not all alternatives are acceptable non-infringing alternatives. To be an acceptable non-infringing alternative, the alternative must have been acceptable to both the party and its customers. Also, the alternative must have been available to the party, meaning the party must have had the capability of implementing the alternative.  However, an acceptable non-infringing alternative need not have actually been produced, marketed, or sold during the period of infringement, so long as it was available to the party. To determine whether there were acceptable non-infringing alternatives, you may consider the following:

(1) Whether the alternative was available around the time of the hypothetical negotiation;

(2) Whether the effects of using the alternative were known in the industry;

(3) Whether the alternative would have had the advantages of the patented invention;

(4) Whether customers would have accepted the alternative;

(5) Whether the party had the necessary equipment, know-how, and experience to implement the alternative; and

(6) The time and cost to the party of implementing the alternative.

# FINAL JURY INSTRUCTION NO. 31

## DAMAGES—EXTRATERRITORIALITY

U.S. patent law does not operate outside the United States.  Patent infringement damages compensate only for the consequences of domestic activity.  Thus, you may not award damages based on the wholly foreign manufacture, sale, offer for sale or use of an accused product that would otherwise infringe if such activity occurred within the United States.

**FINAL JURY INSTRUCTION NO. 32**

**DAMAGES—INSTANCES OF DIRECT INFRINGEMENT**

If you find infringement, you may award damages only where France Telecom has proved that Marvell Semiconductor or a third party has used the accused method within the territory of the United States. France Telecom must prove the extent of such infringing use with reasonable certainty because the amount of awardable damages must be correlated with the extent the accused method has been used in the United States. In other words, you should award only those damages that France Telecom establishes that it more likely than not suffered.

United States District Court
Northern District of California

40

# FINAL JURY INSTRUCTION NO. 33

## DAMAGES —DATE OF COMMENCEMENT

Under the law, France Telecom can recover damages for infringements committed up to six (6) years prior to the date this action was filed. Thus, France Telecom can recover damages for infringement committed on or after June 26, 2006, but not before that date.

**FINAL JURY INSTRUCTION NO. 34**

**DAMAGES—LACHES DEFENSE**

You heard in the Opening Statement about the parties' contentions concerning laches, and you have heard evidence about laches as well.  The decision about whether laches occurred in this case is actually for the Court and not the jury, but you heard about it because I told the parties before the trial started that I would submit the question to the jury for an advisory opinion.  I have changed my mind about that, and I will make the decision without the benefit of your opinion.  France Telecom argues that the laches defense does not have any merit, Marvell Semiconductor disagrees.  I will decide that portion of the case.  For purposes of your deliberations, you should disregard the testimony of Ms. Davis with respected to "laches" damages during a two-month period in 2012.

United States District Court
Northern District of California

# FINAL JURY INSTRUCTION NO. 35

## DAMAGES—END OF DAMAGES PERIOD

If you find infringement, damages may only be awarded for the period of time up to the patent's expiration date.  The '747 patent expired on August 29, 2012, so no damages may be awarded for conduct that occurred after this date.

**FINAL JURY INSTRUCTION NO. 36**

**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**FINAL JURY INSTRUCTION NO. 37**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**FINAL JURY INSTRUCTION NO. 38**

**CONSIDERATION OF EVIDENCE—CONDUCT OF JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

# FINAL JURY INSTRUCTION NO. 39

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## FINAL JURY INSTRUCTION NO. 40

### RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.